IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANGELA P. ANDERSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:16-cv-02038-JAR-KGG |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . 2

TABLE OF AUTHORITIES . . . . . . . . . . . . 4

INTRODUCTION . . . . . . . . . . . . 9

CONCISE STATEMENT OF MATERIAL FACTS TO WHICH
THERE IS A GENUINE ISSUE OF MATERIAL FACT . . . . . . . . . . . . 9

RESPONSE TO DEFENDANT'S STATEMENT OF FACTS . . . . . . . . . . . . 10

PLAINTIFF'S SUPPLEMENTAL STATEMENT OF FACTS . . . . . . . . . . . . 15

SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . 22

ARGUMENT . . . . . . . . . . . . 23

I. STATUTE OF LIMITATIONS . . . . . . . . . . . . 23

    A.    The Statute of Limitations Runs from the Date of the
    Violation, not Date that Ms. Anderson Learns of Mixing
    with Another Consumer . . . . . . . . . . . . 23

    B.    Section 1681e(b) – Preparing Inaccurate Credit Reports . . . . . . . . . . . . 24

    C.    Section 1681i – Failure to Conduct Reasonable
    Reinvestigations of Ms. Anderson's Disputes . . . . . . . . . . . . 27

    D.    Section 1681b – Transmitting a Consumer Report without
    a Permissible Purpose . . . . . . . . . . . . 28

    E.    Plaintiff could not have Discovered whether Equifax was
    Following Reasonable Procedures . . . . . . . . . . . . 29

    F.    The Cases Cited by Defendant do not Preclude Plaintiff's
    Claims Here . . . . . . . . . . . . 30

    G.    Equifax Contends it did not Own Plaintiff's Credit File
    until 2012 . . . . . . . . . . . . 32

II. ACTUAL DAMAGES . . . . . . . . . . . . 32

III. IMPERMISSIBLE PURPOSE CLAIM . . . . . . . . . . . . 35

IV. WILLFUL CLAIM . . . . . . . . . . . .   36

CONCLUSION . . . . . . . . . . . .   39

# TABLE OF AUTHORITIES

## Cases

*Andrews v. Equifax Info. Servs. LLC*,
700 F. Supp. 2d 1276 (W.D. Wash. 2010) . . . . . . . . . . . . . . . . . . . . . . . 29

*Apodaca v. Discover Fin. Serv.*,
417 F.Supp.2d 1220 (D. N.M. 2006) . . . . . . . . . . . . . . . . . . . . . . . 36

*Bakker v. McKinnon*,
152 F.3d 1007 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 33

*Baratto v. Citizens Auto. Fin., Inc.*,
2011 WL 3678676 (D. Minn. 2011) . . . . . . . . . . . . . . . . . . . . . . . 24

*Benjamin v. Experian Info. Sol., Inc.*,
2014 WL 3509044 (D. Minn. 2014) . . . . . . . . . . . . . . . . . . . . . . . 30

*Bermudez v. Equifax Info. Serv, LLC*,
2008 WL 5235161 (M.D. Fla. 2008) . . . . . . . . . . . . . . . . . . . . . . . 31

*Birmingham v. Experian Info. Sol., Inc.*,
633 F.3d 1006 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . 36

*Bittick v. Experian Info. Sol., Inc.*,
419 F.Supp.2d 917 (N.D. Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . 32

*Blackwell v. Capital One Bank*,
2008 WL 793476 (N.D. Ga. 2008) . . . . . . . . . . . . . . . . . . . . . . . 31

*Boris v. Choicepoint Serv., Inc.*,
249 F.Supp.2d 851 (W.D.Ky.2003) . . . . . . . . . . . . . . . . . . . . . . . 32

*Bradshaw v. BAC Home Loans Serv., LP*,
816 F.Supp.2d 1066 (D. Or. 2011) . . . . . . . . . . . . . . . . . . . . . . . 38

*Broccuto v. Experian Info. Sol., Inc.*,
2008 WL 1969222 (E.D. Va. 2008) . . . . . . . . . . . . . . . . . . . . . . . 24

*Cairns v. GMAC Mortg. Corp.*,
2007 WL 735564 (D. Ariz. 2007) . . . . . . . . . . . . . . . . . . . . . . . 36

*Campbell v. Chase Manhattan Bank, USA, N.A.*,
2005 WL 1514221 (D. N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . 24

*Casella v. Equifax Cred. Info. Servs.*,
56 F.3d 469, 474 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Crane v. Trans Union, LLC*,
282 F.Supp.2d 311 (E.D. Penn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Dalton v. Capital Assoc. Indus.*,
257 F.3d 409 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Dixon-Rollins v. Experian Info. Sol., Inc.*,
2010 WL 4939441 (E.D. Pa. Sept. 23, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Drew v. Equifax Info. Serv., LLC*,
690 F.3d 1100 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Drew v. Equifax Info. Serv., LLC*,
2010 WL 5022466, *5 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Drew v. Equifax Info. Serv., LLC*,
N.D. Cal. Case No. CV 07-00726-SI (2010) . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Edwards v. Ocwen Federal Bank, FSB*,
2010 WL 398902 (D. N.J. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Fleischmann v. Care Cred.*,
2012 WL 6082893 (C.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Foster v. Alliedsignal, Inc.*,
2002 293 F.3d 1187 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Graham v. CSC Cred. Serv., Inc.*,
306 F.Supp.2d 873 (D. Minn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Guimond v. Trans Union Cred. Info. Co.*,
45 F.3d 1329 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Hatten v. Experian Info. Sol, Inc.*,
2013 WL 5179190 (E.D. Mich. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Hancock v. Charter One Mortg.*,
2008 WL 2246042 (E.D. Mich. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Howley v. Experian Info. Sol., Inc.*,
813 F.Supp.2d 629 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Hyde v. Hibernia Nat. Bank in Jefferson Parish*,
861 F.2d 446 (5th Cir. 1988), cert. denied, 491 U.S. 910,
109 S.Ct. 3199, 105 L.Ed.2d 706 (1989) . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Jaramillo v. Experian Info. Sol., Inc.*,
155 F.Supp.2d 356 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Jones v. Experian Info. Sol., Inc.*,
982 F.Supp.2d 268 (S.D. N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . 38

*Kirkpatrick v. Equifax Info. Serv., LLC*,
D. Or. Case No. CV 02-1197-MO (2005) . . . . . . . . . . . . . . . . . . . . . . . 38

*Larson v. Ford Cred.*,
2007 WL 1875989 (D. Minn. 2007) . . . . . . . . . . . . . . . . . . . . . . . 24

*Lawrence v. Trans Union LLC*,
296 F.Supp.2d 582 (E.D. Penn. 2003) . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Levine v. World Financial Network Nat. Bank*,
437 F.3d 1118 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Llewellyn v. Allstate Home Loans, Inc.*,
711 F.3d 1173 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Mack v. Equable Ascent Financial, LLC*,
2013 WL 183646 (E.D. Tex. 2013) . . . . . . . . . . . . . . . . . . . . . . . 30

*Marable v. Walker*,
704 F.2d 1219 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . 33

*Marcinski v. RBS Citizens Bank, N.A.*,
36 F.Supp.3d 286, 291 (S.D. N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) . . . . . . . . . . . . . . . . . . 22

*Miller v. Equifax Info. Serv.*, LLC,
2014 WL 2123560 (D. Or. 2014) . . . . . . . . . . . . . . . . . . . . . . . 37

*Miller v. Equifax Info. Serv.*, LLC,
D. Or. Case No. 3:11-cv-01231-BR (2013) . . . . . . . . . . . . . . . . . . . . . . . 38

*Morris v. Cred. Bureau of Cincinnati*,
563 F. Supp. 962 (S.D. Ohio 1983) . . . . . . . . . . . . . . . . . . . . . . . 34

*Musto v. Bell South Telecomms. Corp.*,
748 So.2d 296 (Fla.App.Ct. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Philbin v. Trans Union Corp.*,
101 F.3d 957 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 35

*Pourfard v. Equifax Info. Serv., LLC*,
2010 WL 55446 (D. Or. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 37

*Rasor v. Retail Cred. Co.*,
554 P.2d 1041 (Wash. 1976) . . . . . . . . . . . . . . . . . . . . . . . . 34

*Robinson v. Equifax Info. Serv., LLC*,
E.D. Va. Civil Action No. 1:06-cv-1336. (2009) . . . . . . . . . . . . . . . . . . . . . . . . 38

*Robinson v. Equifax Info. Serv., LLC*,
560 F.3d 235, 246 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 35

*Rodgers v. McCullough*,
296 F. Supp. 2d 895, 902 (W.D. Tenn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 36

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47, 68, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) . . . . . . . . . . . . 36

*Saindon v. Equifax Info. Serv.*,
608 F.Supp.2d 1212, 1215 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 37

*Saenz v. Trans Union, LLC*,
621 F.Supp.2d 1074 (D. Or. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 38

*Sloane v. Equifax Info. Serv., LLC*,
E.D. Va. Case No. 05-cv-01272 (2007) . . . . . . . . . . . . . . . . . . . . . . . . 38

*Valentine v. Equifax Info. Serv., LLC*,
D. Oregon Case No. 05-CV-0801-JO (2007) . . . . . . . . . . . . . . . . . . . . . . . . 38

*Vasquez v. Bank of America, N.A.*,
2015 WL 7075628 at *3-4 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Waggoner v. Trans Union, LLC*,
2003 WL 22220668 (N.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 31

*White v. Imperial Adjustment Corp.*,
2002 WL 1809084 (E.D. La. 2002), aff'd on other grounds,
75 Fed. Appx. 972 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 34

*Williams v. Equifax Info. Serv., LLC*,
Orange Co. Cir. Ct. (Fla.) Case No. 48-2003-CA-9035-0 (2007) . . . . . . 38

*Young v. Equifax Cred. Info. Serv., Inc.*,
294 F.3d 631 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Young v. LVNV Funding LLC*,
2013 WL 4551722 (E.D. Mo. 2013) . . . . . . . . . . . . . . . . . . . . . . 24

## Statutes

15 U.S.C. § 1681 et seq . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 1681a . . . . . . . . . . . . . . . . . . . . . . . . 25

15 U.S.C. § 1681b . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 30

15 U.S.C. § 1681e . . . . . . . . . . . . . . . . . . . . . . . . 24,29,31,35

15 U.S.C. § 1681i . . . . . . . . . . . . . . . . . . . . . . . . 24, 27, 29

15 U.S.C. § 1681o . . . . . . . . . . . . . . . . . . . . . . . . 32

15 U.S.C. § 1681n . . . . . . . . . . . . . . . . . . . . . . . . 32, 36

15 U.S.C. § 1681p . . . . . . . . . . . . . . . . . . . . . . . . 23

## Rules

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . 22

**INTRODUCTION**

Plaintiff Angela Anderson brings this civil action against defendant Equifax Information Services, LLC, for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Equifax merged plaintiff's credit file with another consumer with a different name, different Social Security number, different date of birth, and different address. Despite repeated efforts to get her Equifax to report correct information, continued to report false information. Even after it manually separated Ms. Anderson's credit file, Equifax admits it continued to report false accounts and information in her credit report.

The Court should deny Equifax's motion for summary judgment because there are genuine disputes as to material fact that must be decided by the jury. Plaintiff's claims are not time barred because Equifax's violations of the FCRA occurred within two years of the filing of the complaint. Plaintiff suffered actual damages as allowed by the FCRA. Equifax provided plaintiff's credit report to at least one subscriber that did not have a permissible purpose. Equifax's failure to delete false credit information from plaintiff's credit reports even after multiple disputes demonstrates its violations of the FCRA were willful.

**CONCISE STATEMENT OF MATERIAL FACTS TO WHICH THERE IS A GENUINE ISSUE OF MATERIAL FACT**

In this case, genuine disputes regarding material facts clearly exist:

1. Whether Equifax inserted new inaccurate accounts and information into Ms. Anderson's credit reports within two years of the filing of the complaint, whether Equifax prepared consumer reports with inaccurate accounts and information within the two years of filing, and whether Equifax failed to delete false accounts and information in response to Ms. Anderson's disputes within the two years of filing. Anderson Decl. ¶ 2, 15-24.

2. Whether Ms. Anderson was denied credit, was delayed in refinancing her mortgage,

suffered from stress-induced urticarial, angioedema, and hives, and her sleep, work and personal relationships were adversely affected, as a result of Equifax. Anderson Decl. ¶ 15, 26-30.

3. Whether Equifax properly provided a consumer report to Chase Home Mortgage for an "account review" when Ms. Anderson did not have a Chase Home Mortgage account to review. Anderson Decl. ¶ 32.

4. Whether Ms. Anderson put Equifax on express notice that it was reporting inaccurate information again and again, and whether Equifax used its assembly line ACDV exchange to process Ms. Anderson's disputes, claiming it "verified" accounts that did not belong to Ms. Anderson. Anderson Decl. ¶ 2, 12-25, Def's Stmt. of Facts ¶ 93.

5.  Whether Equifax prevented Ms. Anderson from accessing her report so that she could dispute false accounts and information, and hampered Ms. Anderson's efforts to dispute false information. Anderson Decl. ¶ 4.

6.  Whether Equifax lost or failed to maintain records of Ms. Anderson's communications. Anderson Decl. ¶ 21, 23, Ex. C, Ex. D and Ex. E.

7.  Whether when Equifax did acknowledge Ms. Anderson's disputes, it made matters worse, not better. Anderson Decl. ¶ 4, 5, 17-18, 23-24.

## <u>RESPONSE TO DEFENDANT'S STATEMENT OF FACTS</u>

1-16. Uncontroverted.

17-19. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

20. Uncontroverted that Equifax maintains policies, but deny the conclusory language that the policies are reasonable or that Equifax conducted a reasonable investigation of each of

plaintiff's disputes.

21. Uncontroverted.

22-27. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

28. Uncontroverted.

29. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

30-32. Uncontroverted.

33. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

34. Uncontroverted.

35-38. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

39-40. Uncontroverted.

41-61. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

62. Uncontroverted.

63. Plaintiff is without information to admit or deny; however, any such action failed to

prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

64. Uncontroverted.

65. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

66. Uncontroverted.

67. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

68-69. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

70. Plaintiff admits that Angela Anderson (formerly known as Angela Miles), and Angela Bierman-Bogart (formerly known Angela Bierman), both reside in Kansas. Plaintiff disputes the characterization that they have "almost identical social security numbers." Rather, plaintiff states that they have unique, different Social Security numbers. Anderson Decl. Ex. A, pg. 1, Ex. E, pg. 5.

71. Uncontroverted.

72. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24A.

73. Uncontroverted.

74-76. Plaintiff is without information to admit or deny; however, any such action failed to prevent inaccurate information from appearing in plaintiff's credit reports, and plaintiff denies that defendant complied with its duties under the FCRA. Anderson Decl. ¶ 2, 15-24.

77. Plaintiff admits she obtained a trimerge report in March 2005; however, plaintiff states that did not include Barclay's Bank Acct. No. [Redacted] (opened March 7, 2014), nor did it include Bennington State Bank Acct. No. [Redacted] (opened July 10, 2014). Ms. Anderson could not have discovered these false accounts prior to January 19, 2014, because they did not exist. An additional Citicards CBNA Acct. No. [Redacted] also did not appear on Ms. Anderson's credit reports before that date because it was opened on January 9, 2014. The report also did not include Bank of the West Acct. No. [Redacted], Chase Acct. No. [Redacted – 1 of 2], Chase Acct. No. [Redacted – 2 of 2], Citicards CBNA Acct. No. [Redacted], First Horizon Home Loans Acct. No. [Redacted], First Tennessee Bank Acct. No. [Redacted], Bennington State Bank Acct. No. [Redacted – 1 of 2], or Bennington State Bank Acct. No. [Redacted – 2 of 2]. Anderson Decl. ¶ 2; *cf.* Anderson Decl. Exhibit A.

78-79. Uncontroverted.

80-81. Plaintiff is without information to admit or deny; however, plaintiff notes that the credit report referenced in paragraph 77 refers to "EFX" and lists the name and address for "EQUIFAX" rather than "CSC." *See* Equifax's Facts ¶ 77.

82. Uncontroverted.

83. Plaintiff is without information to admit or deny; however, plaintiff notes that the credit report referenced in paragraph 77 refers to "EFX" and lists the name and address for "EQUIFAX" rather than "CSC," and the letter dated March 31, 2005 identifies CSC Credit Services as an "Equifax System Affiliate." *See* Equifax's Facts ¶ 77.

84. Plaintiff is without information to admit or deny.

85-90. Uncontroverted.

91. Deny. Anderson Decl. ¶¶ 15-24, 35.

92. Uncontroverted that plaintiff called Equifax on August 21, 2015. Plaintiff denies that this was the first time she disputed the information on her Equifax credit reports. Anderson Decl. ¶¶ 2, 4-5, 12; *see also* Declaration of Alicia Fluellen ("Fluellen Decl."), attached to Equifax's Memorandum in Support as Exhibit A, ¶ 41 (alleging that Ms. Anderson contacted CSC "to dispute information" in January 2006).

93. Plaintiff admits that Equifax deleted 7 accounts. Plaintiff denies that it's reinvestigation was reasonable and plaintiff disputes what Equifax characterizes as verification. Anderson Decl. ¶ 2, 12-25; Fluellen Decl. ¶ 54.

94-99. Uncontroverted.

100-01. Plaintiff is without information to admit or deny.  Plaintiff denies that Equifax's procedures were reasonable, and also denies that Equifax completely un-merged the files. Anderson Decl. ¶ 2, 12-25; Fluellen Decl. ¶ 54.

102-110. Uncontroverted.

111. Plaintiff admits that she ultimately did obtain the textbooks, but denies that the "other means" were equal to the Amazon card she attempted to obtain. Anderson Decl. ¶ 6.

112-113. Uncontroverted.

114. Plaintiff began the refinancing process months before that, in August 2015, but the refinancing finalized in November 2015. Anderson Decl. ¶ 26.

115. Controverted.  Anderson obtained the best interest rate which was available for someone with her credit problems, which is not the same as "best available interest rate."

Equifax's Facts ¶ 115 infers that even without the problems alleged in this lawsuit, Angela could not have received a better interest rate, which is not what plaintiff testified to. Ex. C to Equifax's Memo. in Support of Summary Judgment, Anderson Depo. at 11:8-10 ("… As far as I know.").

116. While these items are a component of Plaintiff's claim for punitive damages, they are not the complete basis. In addition to Equifax's failures in this case, Equifax has a pattern and practice of failing to adequately correct errors such as those experienced by Plaintiff over the last twelve years. Further, Equifax has time and time again been sued by consumers who have errors on their credit reports, and time and time again Equifax has failed to implement measures which will actually prevent these errors from happening. Equifax has also failed to implement measures which will lead to errors being corrected in a timely manner. Anderson Decl. ¶ 15-24.

117. Deny. Anderson Decl. ¶ 32.

118. Deny. Anderson Decl. ¶ 26-30.

119. Uncontroverted.

120. While Plaintiff was trying to refinance the mortgage to get her husband off the mortgage, had there been no problems with her credit, the refinancing process would have very likely been quick, easy, stress-free and completed years ago. Anderson Decl. ¶¶ 11-25, 29.

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

1. Since 2004, Ms. Anderson has pled with Equifax (or CSC, an "Equifax affiliate") to fix her credit report. She has disputed numerous accounts appearing on her credit report which belong to another person. Ms. Anderson has spent countless hours on the telephone, writing letters, and online trying to resolve this issue with Equifax. In 2015, Ms. Anderson learned that new false accounts and information had begun appearing in her Equifax credit reports. Ms. Anderson's August 31, 2015 credit report includes a Barclays Bank Delaware account (opened

March 7, 2014), a Bennington State Bank account (opened July 10, 2014), a Citicards CBNA account (opened January 9, 2014), and an address at 520 South 19th Street, Salina, Kansas 67401, which was reported in August 2015. Ms. Anderson disputed these newly appearing accounts and information in 2015. Decl. of Angela Anderson ("Anderson Decl."), ¶ 2; Anderson Decl. Exhibit A; Decl. of Marlene Anderson ("M. Anderson Decl."), ¶ 3.

2. Since 2004, there have been times of tremendous stress when Ms. Anderson was attempting to get credit and was denied. Ms. Anderson was often worried if someone was going to steal her identity, or if her privacy would be compromised because the other person was also receiving her personal financial information. Anderson Decl. ¶ 3.

3. In the last five to six years, Ms. Anderson has been blocked from receiving her own Equifax credit report because she was unable to answer the other person's security questions. When Ms. Anderson called Equifax to try to fix the issue, she was told they could not help her over the phone because she couldn't prove her own identity. Ms. Anderson could not access her credit report online, and therefore had difficulty disputing the items on her credit report. Anderson Decl. ¶ 4.

4. Around June of 2011, Ms. Anderson subscribed to Capital One's credit monitoring service in the hope of potentially fixing this mixed credit file problem with Equifax. In late 2011, Equifax stopped providing the reports to Capital One. In 2013, Capital One made contact with Ms. Anderson to tell her that they were ending the service and not able to help fix the merged credit file. Ms. Anderson did not know what steps to take at that point to fix the report since all of her previous attempts had failed. Anderson Decl. ¶ 5.

5. In 2014, Ms. Anderson received a rejection letter from Chase Bank USA, N.A., related to an Amazon.com credit card that she had hoped to use to purchase books for school. This letter

was dated April 29, 2014, and indicated that Chase had obtained Ms. Anderson's credit information exclusively from Equifax. Anderson Decl. ¶ 6; Anderson Decl. Exhibit B.

6. Ms. Anderson's ex-husband began to pressure her to refinance her mortgage and remove his name from the loan. On July 13, 2015, the pressure from Ms. Anderson's ex-husband to remove his name from the mortgage loan intensified greatly. Anderson Decl. ¶ 7.

7. Ms. Anderson's ex-husband threatened to take her to Court if she did not refinance the home and remove his name from the mortgage. He threatened to seek joint custody in order to cease child support by obtaining equal custody. Ms. Anderson was fearful that her Equifax credit report would affect custody of her children. Anderson Decl. ¶ 8.

8. In August of 2015, Ms. Anderson began the process of refinancing her mortgage through Citibank. Because Ms. Anderson's credit file was mixed, the other person's debts were showing up on Ms. Anderson's credit report, making it appear as if Ms. Anderson had twice the debt of the average consumer. Anderson Decl. ¶ 9; M. Anderson Decl. ¶ 5.

9. 2015 was a particularly busy year for Ms. Anderson, between work, family, children, and graduate school. Ms. Anderson was employed full-time at the Federal Reserve Bank in Kansas City, which is a job she has held since April 20, 1998. Anderson Decl. ¶ 10.

10. Ms. Anderson's refinancing application was first submitted on or around August 17, 2015. Even though Ms. Anderson was an existing Citibank customer, she had to explain that her credit file was mixed with another person. Anderson Decl. ¶ 11.

11. On August 17, 2015, Ms. Anderson called Citibank to discuss refinancing her mortgage and spoke to Waymon Williams. Ms. Anderson explained the situation with her Equifax report, and Mr. Williams said he would see what he could do to help because Citibank primarily uses Equifax reporting and they have a "good relationship." He said he would see

about using Equifax's "Expedited Customer Service Unit." He requested a scan of Ms.

Anderson's birth certificate, social security card, and driver's license. Anderson Decl. ¶ 12

12. On August 21, 2015, Ms. Anderson received an email from Waymon to call a phone

number at Equifax and talk to someone about her Equifax report because there was an issue

about her identity. Anderson Decl. ¶ 13.

13. The email stated that Citibank could not match Ms. Anderson's social security

number with her name or date of birth, and was told to contact Equifax. Anderson Decl. ¶ 14.

14. Ms. Anderson called Equifax and spoke to one of Equifax's associates named

"Orlando" who told her that he didn't know anything about a refinance or Citibank's request for

an Equifax credit report. Ms. Anderson explained the merged credit file situation to him and he

tried to walk her through the merged credit report line-by-line. This phone call lasted for over

half an hour. Ms. Anderson disputed what she could over the phone, but could not dispute each

item as Orlando would not give her any specifics due to security issues. Anderson Decl. ¶ 15.

15. Over the weekend of August 21, 2015, Ms. Anderson received a "Welcome" packet

in the mail from Citibank that contained a mortgage application and the credit report files they

obtained from three credit bureaus. Once again it showed that Equifax was reporting the other

person's personal information and credit on Ms. Anderson's credit report. Anderson Decl. ¶ 16.

16. On August 24, 2015, Ms. Anderson called Equifax again. The representative she

spoke to over the phone was argumentative and kept telling Ms. Anderson that her name was

Angela Bogart and that she was not Angela Anderson. The representative was difficult to

understand due to her heavy accent and had difficulty understanding Ms. Anderson. Ms.

Anderson also tried to explain to her the merged file history leading up to that phone

conversation. The representative told Ms. Anderson that she didn't have a record of the dispute,

or Ms. Anderson's conversation with Orlando, and told Ms. Anderson that she needed to fax a copy of her driver's license and social security card to 888-826-0573. This call lasted approximately 10 to 15 minutes. Anderson Decl. ¶ 17.

17. The phone conversations and lack of knowledge of recent disputes concerned Ms. Anderson. She was worried about the ability to refinance her house, so Ms. Anderson again reached out to Waymon Williams. Anderson Decl. ¶ 18.

18. On August 26, 2015, as the Equifax associate had requested, Ms. Anderson prepared a letter about information in her credit file that was not hers. Ms. Anderson also sent copies of her Social Security card and two driver's licenses (showing her current and married name) She faxed the packet to the number Equifax provided. Anderson Decl. ¶ 19.

19. During this process, Ms. Anderson spoke to Mr. Williams about her options regarding her attempted refinance. Ms. Anderson was told that the Equifax report would need to be fixed before she could move forward with the refinance. Anderson Decl. ¶ 20.

20. On September 4, 2015, Ms. Anderson went to Equifax's "Online Dispute" website to find out the status of her dispute. After entering her information, Ms. Anderson got the message: "The information you provided does not match our records so we are unable to process your request online. Please FAX your dispute and a copy of your driver's license to 888-826-0549." Ms. Anderson sent another detailed dispute letter to Equifax that included a copy of her social security card, copies of both her current and previous driver's licenses. Anderson Decl. ¶ 21.

21. On September 9, 2015, Ms. Anderson received a 54-page credit report dated August 31, 2015. Equifax replaced Ms. Anderson's information with the other person's. Equifax deleted her Citibank mortgage, but other false accounts remained. Ms. Anderson was devastated and called her husband sobbing. She didn't think it was possible, but Equifax had actually managed

to make things worse and the refinance would fall through. Ms. Anderson was sobbing in her kitchen with her 14-year-old daughter patting her on the back and hugging her to try to get Ms. Anderson to calm down. Anderson Decl. ¶ 22; Anderson Decl. Exhibit A.

22. On September 10, 2015, Ms. Anderson called Equifax. She explained that she had sent numerous copies of identification and faxed letters and had just received a report in the mail and Equifax had made the merged credit file worse. The representative commented to Ms. Anderson that they only received Ms. Anderson's fax dated September 4, 2015, and had no record of a dispute before that date. Ms. Anderson told her that she didn't think that was true since the credit report was dated August 31, 2015. The representative put Ms. Anderson on hold several times and told her she would be transferred to the escalation department; but she then told Ms. Anderson that they could not speak with her on the phone and they would continue investigating the dispute. Ms. Anderson needed to close on her refinance in mid-October. The representative told Ms. Anderson that it could take longer to investigate the dispute. The phone call had already lasted for 45 minutes. Anderson Decl. ¶ 23.

23. On October 7, 2015, Ms. Anderson checked the Equifax Online Dispute Notification for the new case number Equifax had provided on September 10. The website stated that the case that was opened on September 4, was completed on October 6, and the results had already been put in the mail. Ms. Anderson called Equifax on October 15, 2015. She was told her credit file was not masked and "a lot of things are still under investigation." Equifax had no record of the dispute being completed or mailed. Anderson Decl. ¶ 24.

24. This was the last interaction Ms. Anderson had with Equifax. Ms. Anderson never received verification via email or postal mail that showed Equifax completed the dispute or corrected her credit reports. Anderson Decl. ¶ 25.

25. From August to December of 2015, while Ms. Anderson was attempting to refinance her mortgage, she was constantly worried about the Equifax situation. Ms. Anderson spent less time with her children, her sleeping and eating patterns were disrupted, and the quality of her work was affected and compromised. Ms. Anderson's body began to break down due to the stress of situation. Anderson Decl. ¶ 26; M. Anderson Decl. ¶¶ 6-7.

26. These events disrupted Ms. Anderson's sleep. Ms. Anderson would typically not fall asleep until around 2:00 am due to the constant worry, anxiety, and stress. Ms. Anderson would often wake up in the middle of the night. Ms. Anderson felt depressed, anxious, and hopeless. Ms. Anderson felt like she had hit a brick wall mentally, emotionally, and physically. Anderson Decl. ¶ 27; M. Anderson Decl. ¶¶ 6-7, 10.

27. Ms. Anderson experienced a constant burning sensation on her skin which was very painful and uncomfortable. Her sleep was affected because she felt like her skin was on fire. Ms. Anderson developed hives all over her body, and angioedema caused her face, tongue and abdomen to swell causing severe pain. Anderson Decl. ¶ 28; M. Anderson Decl. ¶ 9.

28. In December 2015, Ms. Anderson made an appointment with Dr. Celina C. Bernabe, an allergist and immunologist, and met with her nurse practitioner, because Ms. Anderson's skin and tongue were so swollen and painful that she could no longer stand the pain. She worried that the tongue swelling could become life threatening. She was prescribed steroids, antihistamines, and an Epipen. In January 2016, Ms. Anderson met with Dr. Bernabe, and was diagnosed with pressure urticaria and angioedema, the rapid swelling of bodily tissues. Dr. Bernabe opined that Ms. Anderson's hives, urticaria, and angioedema were caused by the stress of dealing with Equifax. Anderson Decl. ¶ 29; M. Anderson Decl. ¶ 9; Ex. C to Equifax's Memo. in Support of Summary Judgment, Anderson Depo. 87:4-89-8.

29. The refinance was ultimately approved and the documents were signed on or about November 19, 2015. Ms. Anderson was physically and emotionally drained. This caused significant tension in Ms. Anderson's relationship with her husband. Ms. Anderson's family could not touch her without causing a burning sensation. Anderson Decl. ¶ 30.

30. Ms. Anderson did not know her Equifax credit file had supposedly been corrected until she gave her deposition for this case in the fall of 2016 – about nine months after the filing of this lawsuit – when Equifax's attorney, represented that her credit report had been corrected. Anderson Decl. ¶ 31.

31. The inquiry section of Ms. Anderson's August 31, 2015 credit report shows that Equifax provided a consumer report to "Chase Home Lending" for an "account review" on August 18, 2015. Ms. Anderson did not have an account with Chase Home Lending which would need to be reviewed. Anderson Decl. ¶ 32.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, courts view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Foster v. Alliedsignal, Inc.*, 2002 293 F.3d 1187, 1192 (10th Cir. 2002), *citing*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

<u>**ARGUMENT**</u>

**I. STATUTE OF LIMITATIONS.**

    **A.**  <u>**The Statute of Limitations Runs from the Date of the Violation, not the Date that Ms. Anderson Learned of the Mixing with Another Consumer.**</u>

Equifax argues that Ms. Anderson was aware Equifax had incorrectly included in her credit reports information belonging to another person in 2004, and therefore, her claims for Equifax's misconduct in 2014 and 2015 must be time barred. However, in making this argument, Equifax ignores the plain language of the statute and the overwhelming weight of court rulings on this issue.

The FCRA provides that civil actions must be brought "not later than the earlier of – (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. This case was filed on January 19, 2016 [Dkt. #1]. Equifax failed to comply with specific statutory duties in 2014 and 2015, i.e., within both the shorter two-year period.

Equifax fails to cite the seminal appellate decision on the statute of limitations under the FCRA, *Hyde v. Hibernia Nat. Bank in Jefferson Parish*, 861 F.2d 446, 450 (5th Cir. 1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3199, 105 L.Ed.2d 706 (1989). In *Hyde*, the Fifth Circuit concluded "***each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies***." 861 F.2d at 450. (emphasis added).

This approach was confirmed in *Young v. Equifax Credit Info. Serv., Inc.*, F.3d 631, 635 (5th Cir. 2002) ("republication of credit information resulting in a new denial of credit constitutes a distinct harm and thus gives rise to a cause of action that is separate from that arising from the original publication"). *Accord*, *Marcinski v. RBS Citizens Bank, N.A.*, 36 F.Supp.3d 286, 291 (S.D. N.Y. 2014) ("Courts considering the related question of whether each

re-report of inaccurate or false information by a credit rating agency constitutes a distinct tort likewise have answered the question in the affirmative.").

Courts around the country have approvingly cited, and indeed followed, the *Hyde* Court. *See, e.g.*, *Young v. LVNV Funding LLC*, 2013 WL 4551722, at *3 (E.D. Mo. 2013) (following the "majority of courts" concluding that each re-report of inaccurate information is subject to its own statute of limitations); *Vasquez v. Bank of America, N.A.*, 2015 WL 7075628 at *3-4 (N.D. Cal. 2015); *Jaramillo v. Experian Info. Solutions, Inc.*, 155 F.Supp.2d 356, 360–61 (E.D. Pa. 2001); *Broccuto v. Experian Info. Sol., Inc.*, 2008 WL 1969222, at *4 (E.D. Va. 2008); *Fleischmann v. Care Credit*, 2012 WL 6082893, at *3 (C.D. Cal. 2012); *Larson v. Ford Credit*, 2007 WL 1875989, at *2–4 (D. Minn. 2007); *Campbell v. Chase Manhattan Bank, USA, N.A.*, 2005 WL 1514221, at *11 n. 5 (D. N.J. 2005); *Musto v. Bell South Telecomms. Corp.*, 748 So.2d 296 (Fla.App.Ct. 1999); *Baratto v. Citizens Auto. Fin., Inc.*, 2011 WL 3678676, at *5 (D. Minn. 2011).

### B.  <u>Section 1681e(b) – Preparing Inaccurate Credit Reports.</u>

In *Lawrence v. Trans Union LLC*, 296 F.Supp.2d 582, 587 (E.D. Pa. 2003) the court analyzed two of the claims that Ms. Anderson asserts in this case under Section 1681e(b) and 1681i. The first claim is for preparing inaccurate credit reports (referred to as "consumer reports").

15 U.S.C. § 1681e(b) provides that "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The plain language of that statute requires Equifax to follow reasonable procedures *"[w]henever a consumer reporting agency prepares a consumer report.*" (emphasis added).

The term consumer report has a particular meaning in the FCRA: "The term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness . . . " 15 U.S.C. § 1681a(d). Thus, Equifax must follow reasonable procedures to assure maximum possible accuracy whenever it prepares a written communication bearing on the consumer's credit worthiness.

*Lawrence* is instructive. The court began by reciting the basic rule established in *Hyde*: "Each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies." 296 F.Supp.2d at 587 (*citing*, *Jaramillo v. Experian Info. Solutions. Inc*., 155 F.Supp.2d 356, 359–60 (E.D.Pa.2001)). The *Lawrence* court then observed:

> "[Trans Union] first began misreporting Lawrence's judgment in 1997. TU's false transmissions of Lawrence's credit reports which occurred prior to July 3, 2000 are time barred. However, Lawrence has also provided evidence of erroneous transmissions of the credit report during the two years preceding the filing of this suit. * * * Lawrence's claims based on these transmissions which occurred after July 3, 2000 are not time-barred. 296 F.Supp.2d at 587.

In this case, Equifax prepared consumer reports for Ms. Anderson within the two years preceding the filing of the complaint. Chase sent an adverse action notice to Ms. Anderson informing that her application for an Amazon.com Visa Platinum credit card had been denied on April 28, 2014, due to information provided by Equifax. This is confirmed by an inquiry by Chase on the same date listed on Ms. Anderson's Equifax credit report. Anderson Decl., Ex. B.

Furthermore, the inquiry section of Ms. Anderson's credit report shows that throughout 2014 and 2015 Equifax continued to provide consumer reports to various creditors for account reviews to Citibank, Capital One, Citi Cards CBNA, and Citimortgage, and promotional reports to Onemain Financial, Nations Lending Corporation, Credit One Bank NA, Wfnnb/Christopher & Banks, Hays Marketing & Consulting, Endeavor Capital, Citi Cards CBNA, Bank of America, Montgomery Wards, Discover Financial Services, and Comenity Bank. All of these consumer

reports were prepared within the two years prior to the filing of the complaint, and included false accounts and information. Anderson Decl., Ex. B.

Moreover, Equifax reported new, false accounts and information on her credit report, which she could not have known of prior to 2014. For example, Ms. Anderson's August 31, 2015 credit report includes false accounts which were not in existence more than two years before the filing of the complaint, including Barclay's Bank Acct. No. [Redacted] (opened March 7, 2014), Bennington State Bank Acct. No. [Redacted] (opened July 10, 2014). Ms. Anderson could not have discovered these false accounts prior to January 19, 2014, because they did not exist. An additional Citicards CBNA Acct. No. [Redacted] also did not appear on Ms. Anderson's credit reports before that date because it was opened on January 9, 2014. Furthermore, Ms. Anderson's August 31, 2015 credit report includes an address at 520 S. 19th Street, Salina KS 67401, which was reported in August of 2015. Anderson Decl., Ex. B.

Finally, Equifax withheld and/or concealed her credit report which included other false accounts from Ms. Anderson. In October of 2010, Ms. Anderson attempted to obtain her Equifax credit report. Equifax sent her a letter stating that online report was unavailable. Ms. Anderson signed up for a service through Capital One to get her credit report, and obtained a tri-merge report dated June 2011. That report omitted Bank of the West Acct. No. [Redacted], Chase Acct. No. [Redacted], Chase Acct. No. [Redacted], Citicards CBNA Acct. No. [Redacted], First Horizon Home Loans Acct. No. [Redacted], First Tennessee Bank Acct. No. [Redacted], Bennington State Bank Acct. No. [Redacted – 1 of 2], or Bennington State Bank Acct. No. [Redacted – 2 of 2]. Def's Ex. D. Because Equifax was withholding Ms. Anderson's credit report from her, and providing incomplete reports to the Capital One service, Ms. Anderson could not have discovered these false accounts until she finally obtained her updated Equifax credit report

in 2015.

### C. **Section 1681i – Failure to Conduct Reasonable Reinvestigations of Ms. Anderson's Disputes.**

The plaintiff in *Lawrence*, *supra*, brought a second claim for relief under a separate

section of the FCRA, which is applicable in this case. 15 U.S.C. § 1681i(a)(1)(A) provides:

> "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice . . .".

The court in *Lawrence* noted:

> "Liability arises under 1681i when the consumer reporting agency allegedly violates its duty under the FCRA to reinvestigate. Pursuant to 15 U.S.C. § 1681i(a)(1)(a), the agency must reinvestigate the disputed item "before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer." Therefore, liability arises under 1681i thirty days after the consumer reporting agency receives notice of the disputed item from the consumer. Acton at 1098. Lawrence wrote to TU in February 2001 about the false information on her credit report. Liability therefore arose for TU's alleged failure to reinvestigate this dispute in March 2001, putting this claim well within the applicable two year statute of limitations." 296 F.Supp.2d at 587 (internal cites omitted) (*citing*, *Briley v. Burns Int'l. SAFETOHIRE.COM*, 78 Fed. Appx. 481, 485 (6th Cir. 2003) and *Acton v. Bank One Corp.*, 293 F.Supp.2d 1092, 1097 (D. Ariz. 2003)).

In this case, Ms. Anderson sent several disputes in 2015. This includes her August 21,

2015 dispute. Anderson Decl. ¶ 35. Ms. Anderson called Equifax on August 24, 2015, and then

followed up with a separate letter she faxed to Equifax on the same date. Ms. Anderson learned

that the dispute had been ignored when Equifax sent her a credit report dated August 31, 2015

which failed to correct the disputed accounts and information.

This dispute included newly discovered, and therefore newly disputed information,

because the Barclay's Bank Acct. No. [Redacted], Bennington State Bank Acct. No. [Redacted],

and Citicards CBNA Acct. No. [Redacted], were opened after Ms. Anderson's last communication with Equifax, and the last credit report she had prior to that date did not include Bank of the West Acct. No. [Redacted], Chase Acct. No. [Redacted - 1 of 2], Chase Acct. No. [Redacted – 2 of 2], Citicards CBNA Acct. [Redacted], First Horizon Home Loans Acct. No. [Redacted], First Tennessee Bank Acct. No. [Redacted], Bennington State Bank Acct. No. [Redacted – 1 of 2], or Bennington State Bank Acct. No. [Redacted – 2 of 2]. Ms. Anderson sent Equifax another dispute letter dated September 4, 2015. Ms. Anderson learned that the dispute had been ignored when Equifax sent her a letter dated September 12, 2015 which failed to correct the disputed accounts and information.

Ms. Anderson also called Equifax repeatedly between August and October of 2015, though she was told that Equifax did not have a record of her disputes. Equifax now maintains that it only has retained records of a single phone conversation. Anderson Decl. ¶ 15-24.

October 6, 2015, the file was manually worked by Equifax employees, which corrected some but not all of the errors. Even when Equifax conducted a manual sort of the credit files, the credit file produced on that date still contained inaccurate information, which could result in re-mixing. This included a false address in Salina, Kansas, Barclay's Bank Acct. [Redacted], Citicards Acct. [Redacted], Citicards Acct. [Redacted], Bennington Acct. [Redacted – 1 of 2], and Bennington Acct. [Redacted – 2 of 2].

**D.  Section 1681b – Transmitting a Consumer Report without a Permissible Purpose.**

Ms. Anderson alleges a third claim for relief under Section 1681b. Equifax failed to comply with that section of the FCRA by providing Ms. Anderson's private accounts and information to the other consumer's creditors. The court in *Howley v. Experian Info. Sol., Inc*., 813 F.Supp.2d 629 (2011), extended the holding in *Lawrence*, *supra*, to claims under Section

1681b. 813 F.Supp.2d at 635 ("Plaintiffs have provided sufficient evidence that an Experian

credit report prepared for Mr. Firlein contained plaintiff's credit information and the report was

provided to creditors and available to Mr. Firlein within the two years prior to filing their

complaint.").

The inquiry section of Ms. Anderson's credit report shows that Equifax provided a

consumer report to the Chase Home Lending for an "account review" on August 18, 2015. Ms.

Anderson did not have an account with Chase Home Lending for it to review.

**E.   Plaintiff could not have Discovered whether Equifax was Following Reasonable Procedures.**

Finally, Equifax's maintains confidential proprietary procedures which are not known by

the public and which were not known by Ms. Anderson. Several courts have held that the statute

of limitations does not run until the consumer reasonably discovers whether the applicable

procedures were reasonable. In *Andrews v. Equifax Info. Servs. LLC*, 700 F. Supp. 2d 1276

(W.D. Wash. 2010), the district court denied Equifax's motion for summary judgment on the

same grounds as Equifax moves here. The court observed:

> "Equifax does not explain how, from the information it sent, Plaintiff could discern
> whether the company's procedures in ensuring accuracy or reinvestigating her dispute
> were reasonable, indicating a violation of §§ 1681e(b) or 1681i(b). Equifax did not
> provide the reports themselves to the Court, nor did it provide any deposition testimony
> that would indicate that Plaintiff was aware of Equifax's procedures, nor did it enumerate
> whether those reports were the kind of investigation contemplated by the statutes." 700 F.
> Supp. 2d at 1279.

In *Drew v. Equifax Info. Serv., LLC*, 690 F.3d 1100 (9th Cir. 2012), the court considered

the statute of limitations on an FCRA claim against a creditor called FIA. Like plaintiff's claims

here, the court noted that the FCRA is not a strict liability statute, and liability is premised upon

the reasonableness of the defendant's actions. 690 F.3d at 1110. In holding that the plaintiff's

claims were not time-barred, the court noted: "FIA does not show how Drew should have

guessed that its previous, undisclosed investigation failed to meet [the] reasonableness standard." *Id.* at 1111.

### F.  The Cases Cited by Defendant do not Preclude Plaintiff's Claims Here.

Defendant cites a series of cases for the proposition that plaintiff's claims are time-barred because she discovered that Equifax was including accounts and information belonging to another person in her credit reports in 2004. These cases are inapposite where, as here, new accounts and information appeared within the applicable statutory period, and where the plaintiff provided additional information to dispute newly discovered false accounts and information. As noted above, plaintiff could not have discovered the false reporting of Barclay's Bank Acct. No. [Redacted] (opened March 7, 2014), or Bennington State Bank Acct. No. [Redacted] (opened July 10, 2014), or Citicards CBNA Acct. No. [Redacted] (opened January 9, 2014), the address at 520 S. 19th Street, Salina KS 67401, which was reported in August of 2015."

Defendant cites *Mack v. Equable Ascent Financial, LLC*, 2013 WL 183646 (E.D. Tex. 2013). In *Mack*, the plaintiff alleged that Trans Union provided his credit report to a company without a permissible purpose, in violation of Section 1681b. But, the undisputed evidence in the case was that the plaintiff was aware of that credit inquiry prior to the applicable limitations period. *Id.* at *5.

Defendant cites *Benjamin v. Experian Info. Sol., Inc.*, 2014 WL 3509044 (D. Minn. 2014). In that case the pro se plaintiff conceded that the only dispute claimed in the complaint occurred outside the applicable statute of limitations. *Id.* at *2.

Defendant cites *Edwards v. Ocwen Federal Bank, FSB*, 2010 WL 398902 (D. N.J. 2010). In that case, the plaintiff argued only that newly alleged FCRA claims related back to the date of the original complaint. The court disagreed. *Id.* at *5.

Defendant cites *Waggoner v. Trans Union, LLC*, 2003 WL 22220668 (N.D. Tex. 2003). In that case, the court held that credit denials that predated the complaint by more than two years would be time barred. However, the court did not hold that claims arising within the two years preceding the complaint were time barred. *Id.* at *5, FN 2.

Defendant cites *Bermudez v. Equifax Info. Serv, LLC*, 2008 WL 5235161 (M.D. Fla. 2008). The plaintiff correctly contended that the defendant failed to comply with Section 1681e(b) each time it prepared a new consumer report, but did not cite *Hyde* or any other of the many cases endorsing it. *Id.* at *2 ("Bermudez provides no legal support for this argument . . . ").

Defendant cites *Hatten v. Experian Info. Sol, Inc*., 2013 WL 5179190 (E.D. Mich. 2013). There, the court considered the statute of limitations, found it was not dispositive, and granted summary judgment on other grounds. *Id.* at *8 ("though this case may be time-barred, in light of the multiple potential outcomes on the statute of limitations issue, the Court will decide this matter on other grounds.").

Defendant cites *Hancock v. Charter One Mortg*., 2008 WL 2246042 (E.D. Mich. 2008). In that case, the plaintiffs disputed the balance and pay status of a mortgage. The court ruled that "The Hancock's subsequent dispute letters regarding the same erroneous information do not restart of the statute of limitations clock." *Id.* at *2. In this case, plaintiff was not simply disputing "the same erroneous information." Rather, as noted above she was disputing new false accounts and information which were not previously known to her, or even in existence.

Defendant cites *Blackwell v. Capital One Bank*, 2008 WL 793476 (N.D. Ga. 2008). In that case, the plaintiff alleged that Capital One was falsely reporting an account that belonged to her ex-husband. She disputed that the same account belonged to her several times over several years. In this case, Equifax reported new false accounts and information, and Ms. Anderson

disputed new accounts and information which did not even exist more than two years prior to the filing of the complaint in this case.

Defendant cites *Bittick v. Experian Info. Sol., Inc.*, 419 F.Supp.2d 917 (N.D. Tex. 2006). In that case, the court acknowledged *Hyde*, but found that the consumer reports at issue, and plaintiff's dispute, were outside of the applicable statute of limitations. The plaintiff claimed that the information was removed and then re-reported; however the court noted that the re-reporting was not alleged in the complaint. 419 F.Supp.2d at 919.

### G.  Equifax Contends it did not Own Plaintiff's Credit File until 2012.

Equifax contends that although it merged plaintiff's credit file with that of the other consumer in 2004, it did not own plaintiff's credit file, and instead a separate company, CSC owned it until 2012. Def's Stmt. of Facts, ¶ 80-81. While these statements seem to contradict one another, they create a question of fact for the jury as to whether Equifax was a proper party in 2004, or at any time prior to 2012, and whether plaintiff could have asserted a claim against Equifax relating to CSC's credit file in that time frame.

## II. ACTUAL DAMAGES.

Section 1681o(a) provides that a consumer reporting agency such as Equifax that negligently fails to comply with the FCRA is liable for "any actual damages sustained by the consumer as a result of the failure . . ." See also, Section 1681n(a)(1)(A) (willful violations).

The Tenth Circuit has held that "actual damages" includes noneconomic damages. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173 (10th Cir. 2013). *Accord, Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Levine v. World Financial Network Nat. Bank*, 437 F.3d 1118 (11th Cir. 2006); *Boris v. Choicepoint Services, Inc.*, 249 F.Supp.2d 851, 859 (W.D. Ky. 2003) (citations omitted) ("It is well settled that actual damages under the FCRA are not

limited to pecuniary out of pocket losses but may include non-pecuniary damages for humiliation, mental distress, and injury to one's reputation and creditworthiness").

In *Llewellyn*, the Tenth Circuit reversed the district court's order granting summary judgment, noting: "Contrary to the Ocwen Defendants' assertion, Plaintiff was not required to produce evidence to corroborate his detailed and specific testimony in order to survive summary judgment." *Id*. The court continued:

> Plaintiff described the circumstances surrounding his injury in reasonable and sufficient detail that he was not required to produce further evidence of his emotional distress. We conclude that his affidavit alone created a genuine dispute as to whether the Ocwen Defendants' actions caused him to suffer emotional damages. *Id*. at 1183.

Moreover, plaintiff may recover noneconomic damages even in the absence of a credit denial. *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("[N]o case has held that denial of credit is a prerequisite to recovery under the FCRA"). A plaintiff's own testimony that he was embarrassed and humiliated by defendant's conduct is sufficient to support an award of compensatory damages. *Marable v. Walker*, 704 F.2d 1219, 1220 (11th Cir. 1983).

In *Levine*, *supra*, the Eleventh Circuit reversed dismissal of the plaintiff's emotional distress claim, and conducted a survey of other court rulings on noneconomic damages, noting:

> Several courts have previously recognized the possibility that a claim for actual or compensatory damages under FCRA may include compensation for emotional distress in the absence of physical injury or out-of-pocket expenses. See, e.g., *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (holding that, even in the absence of "out-of-pocket expenses or costs incurred," the district court did not abuse its discretion in awarding actual and punitive damages when appellees testified "about how they felt when appellant obtained their credit reports and violated their privacy, thereby causing them some emotional distress"); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 n.3 (3rd Cir. 1996) ("Given the amorphous nature of the damages at issue, we do not consider it necessary that [the plaintiff] state his damages with any greater degree of particularity."); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2nd Cir. 1995) ("The District Court properly recognized that 'actual damages' may include humiliation and mental distress, even in the absence of out-of-pocket expenses"). 437 F.3d at 1124-1125.

In this case, Ms. Anderson offers evidence of significant damages. Ms. Anderson spent less time with her children, her sleeping and eating patterns were disrupted, and it affected her work. Ms. Anderson's body began to break down due to the stress of situation. Anderson Decl. ¶ 26; M. Anderson Decl. ¶¶ 6-7. Ms. Anderson felt depressed, anxious, and hopeless. Ms. Anderson felt like she had hit a brick wall mentally, emotionally, and physically. Anderson Decl. ¶ 27; M. Anderson Decl. ¶¶ 6-7, 10.

Ms. Anderson experienced a constant burning sensation on her skin which was very painful and uncomfortable. Ms. Anderson developed hives all over her body, and angioedema caused her face, tongue and abdomen to swell causing severe pain. Anderson Decl. ¶ 28; M. Anderson Decl. ¶ 9.

Ms. Anderson received medical treatment and was diagnosed with urticaria and angioedema. She was prescribed steroids, antihistamines, and an Epipen. Anderson Decl. ¶ 29; M. Anderson Decl. ¶ 9; Ex. C to Equifax's Memo. in Support of Summary Judgment, Anderson Depo. 87:4-89-8.

The experience caused significant tension in Ms. Anderson's relationship with her husband. Ms. Anderson's family could not touch her without causing a burning sensation. Anderson Decl. ¶ 30.

Plaintiff can also recover actual damages for damage to her reputation. *Morris v. Credit Bureau of Cincinnati*, 563 F. Supp. 962 (S.D. Ohio 1983) ($10,000). In *Rasor v. Retail Credit Co.*, 554 P.2d 1041 (Wash. 1976); *Dalton v. Capital Assoc. Indus.*, 257 F.3d 409 (4th Cir. 2001) *White v. Imperial Adjustment Corp.*, 2002 WL 1809084 (E.D. La. 2002), aff'd on other grounds, 75 Fed. Appx. 972 (5th Cir. 2003) (noting that damages for injury to reputation and creditworthiness are available even without proof of pecuniary damages). In this case, Equifax

made it appear that Ms. Anderson had opened scores of credit cards, student loans, and mortgages she had not, significantly skewing her debt-to-income ratio.

Defendant also argues that plaintiff cannot offer "hearsay" documents into the record. In *Philbin*, *supra*, the plaintiff did not have direct evidence that his credit denials were caused by the CRA. The defendant challenged the damage claim contending that there could be other factors to explain the adverse decisions by the creditors. The Third Circuit rejected such challenges and permitted proof of the credit denials by circumstantial evidence and inference:

> "More fundamentally, the district court erred by assuming that Philbin could satisfy his burden only by introducing direct evidence that consideration of the inaccurate entry was crucial to the decision to deny credit. While Philbin's case might have been stronger had he deposed or taken affidavits of those responsible for the decision, such evidence is not essential to make out a prima facie case pursuant to § 1681e(b)." 101 F.3d at 968.

Finally, plaintiff incurred damages in the form of time spent attempting to get her credit corrected. Such injury is compensable under the FCRA. *Robinson v. Equifax Info. Serv., LLC*, 560 F.3d 235, 246 (4th Cir. 2009) ("Based on our review of the record, we also conclude that Robinson proffered sufficient evidence of loss of income from time missed from work addressing Equifax's errors."); *Dixon-Rollins v. Experian Info. Solutions, Inc.*, No. 09-0646, 2010 WL 4939441 (E.D. Pa. Sept. 23, 2010) ("At the very least, she is entitled to damages suffered in connection with her efforts to correct the error in Trans Union's credit report").

## III. IMPERMISSIBLE PURPOSE CLAIM.

Section 1681b(a) provides that a CRA may only furnish a consumer report under certain limited circumstances. The inquiry section of Ms. Anderson's August 31, 2015 credit report shows that Equifax provided a consumer report to "Chase Home Lending" for an "account review" on August 18, 2015. Ms. Anderson did not have an account with Chase Home Lending which would need to be reviewed, and therefore the provision of Ms. Anderson's report to

"Chase Home Lending" was done without a permissible purpose. Anderson Decl. ¶ 32.

## IV. WILLFUL CLAIM.

Under Section 1681n(a) . . . the consumer need not prove actual damages if the violation

is willful, but may recover punitive damages and statutory damages ranging from $100 to

$1,000." *Birmingham v. Experian Info. Sol., Inc*., 633 F.3d 1006, 1009 (10th Cir. 2011). "A

'willful' violation is either an intentional violation or a violation committed by an agency in

reckless disregard of its duties under the FCRA." *Id*. at 1010. "Recklessness is measured by 'an

objective standard: action entailing an unjustifiably high risk of harm that is either known or so

obvious that it should be known.'" Id. (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68,

127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007)). Courts considering willfulness under the FCRA

have noted: "in the overwhelming number of cases in which state of mind is dispositive, the issue

of punitive damages is best left for the trier of fact to determine." *Cairns v. GMAC Mortg. Corp.,*

2007 WL 735564 (D. Ariz. 2007); *Rodgers v. McCullough*, 296 F. Supp. 2d 895, 902 (W.D.

Tenn. 2003).

In *Apodaca v. Discover Fin. Serv.*, 417 F.Supp.2d 1220 (D. N.M. 2006), the New Mexico

District Court considered Equifax's ACDV system and denied summary judgment:

> Based on the evidence of record, a rational factfinder could conclude that Equifax knew
> that the pointless repetition of the cursory CDV procedure by its various agents and
> contractors was not going to resolve Plaintiff's dispute in a timely manner and only
> served to delay the matter until Plaintiff tired of the process or proceeded to litigation.
> Equifax's continued reliance on such a procedure during the course of Plaintiff's disputes
> may reflect the calculation that simply allowing a certain category of FCRA violations to
> continue would be less costly to the company than fixing its internal dispute-
> resolution mechanisms to include an appeal procedure or quality-control function for use
> in special situations like this one, where the potential harm to the consumer is great and
> the information provided by the consumer is specific and detailed. I believe Congress
> intended the FCRA's punitive-damages provision to deter such calculations by making it
> more costly for credit-reporting agencies to ignore a known category of FCRA violations
> in this manner. Because there are disputed issues of material fact on this issue, I conclude
> that the question whether punitive damages are warranted in this case is for the jury

to answer. 417 F.Supp.2d at 1223.

*Accord*, *Pourfard v. Equifax Info. Serv., LLC*, 2010 WL 55446 (D. Or. 2010); *Saindon v. Equifax Info. Serv.*, 608 F.Supp.2d 1212, 1215 (N.D. Cal. 2009) ("In its motion and declarations, it does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy.").

Several other courts have considered Equifax's procedures for complying with the FCRA post-trial and found that the evidence warranted a finding of willfulness after juries returned punitive damages verdicts against Equifax. In *Miller v. Equifax Info. Serv.*, LLC, 2014 WL 2123560 (D. Or. 2014), the court noted:

> Miller also argues Equifax's recklessness was proven by trial evidence that showed Equifax's mixed-file errors were not rare or isolated problems, and, in fact, Equifax's industry "matching" criteria produced errors in two-to-four million consumer files. As noted, Miller's expert testified about cases in which juries returned verdicts against Equifax based on allegations of mixed files, and Equifax's own representative testified it is Equifax's policy to investigate and to correct files only after a lawsuit is filed. Miller contends the jury could have regarded Miller as an " 'exemplar' of the harm that Equifax is prepared to inflict on many other consumers." Pl.'s Opp'n Mem. at 10.

> As noted, the jury found Equifax acted willfully when it violated Miller's FCRA rights. The Court agrees with Miller that the jury's Verdict supports a conclusion that Equifax's conduct was more than merely indifferent to Miller's rights and, in fact, resembled reckless disregard of those rights in light of the fact that Miller's repeated efforts over two years to get Equifax to correct its errors went completely unheeded. *Id.* at *5.

*Accord*, *Drew v. Equifax Info. Serv., LLC*, 2010 WL 5022466, *5 (N.D. Cal. 2010) ("Plaintiff presented sufficient evidence for a reasonable jury to find that defendant ran an unjustifiably high risk of violating FCRA.").

In addition, courts around the country have found that conduct by other CRAs similar to

Equifax's presented questions of fact for the jury to decide. See, e.g., *Jones v. Experian Info. Sol., Inc.*, 982 F.Supp.2d 268 (S.D. N.Y. 2013); *Lawrence v. Trans Union LLC*, 296 F.Supp.2d 582 (E.D. Penn. 2003); *Crane v. Trans Union, LLC*, 282 F.Supp.2d 311 (E.D. Penn. 2003); *Graham v. CSC Cred. Serv., Inc.*, 306 F.Supp.2d 873 (D. Minn. 2004); *Saenz v. Trans Union, LLC*, 621 F.Supp.2d 1074 (D. Or. 2007); *Bradshaw v. BAC Home Loans Serv., LP*, 816 F.Supp.2d 1066 (D. Or. 2011).

Moreover, juries across the country have repeatedly put Equifax on notice of the inadequacy of its procedures, by returning verdicts against Equifax for failing to comply with the FCRA: *Kirkpatrick v. Equifax Info. Serv., LLC*, D. Or. Case No. CV 02-1197-MO (2005); *Valentine v. Equifax Info. Serv., LLC*, D. Oregon Case No. 05-CV-0801-JO (2007); *Williams v. Equifax Info. Serv., LLC*, Orange Co. Cir. Ct. (Fla.) Case No. 48-2003-CA-9035-0 (2007); *Sloane v. Equifax Info. Serv., LLC*, E.D. Va. Case No. 05-cv-01272 (2007); *Robinson v. Equifax Info. Serv., LLC*, E.D. Va. Civil Action No. 1:06-cv-1336. (2009); *Drew v. Equifax Info. Serv., LLC*, N.D. Cal. Case No. CV 07-00726-SI (2010); *Miller v. Equifax Info. Serv.*, LLC, D. Or. Case No. 3:11-cv-01231-BR (2013).

In *Drew*, *supra*, the court noted that Equifax has long been on notice of mixed files: "[D]efendant long ago acknowledged these problems when it entered into agreements with the FTC and several states about reinvestigation of mixed files." 2010 WL 5022466, *5.

In this case, Equifax engaged in the same conduct that has resulted in the denial of summary judgment in countless other cases, and in significant punitive damages verdicts in trials around the country. Ms. Anderson put Equifax on express notice that it was reporting inaccurate information again and again. Anderson Decl. ¶ 2, 12-25. Equifax used its assembly line ACDV exchange to process Ms. Anderson's disputes, claiming it "verified" accounts that did not belong

to Ms. Anderson. Def's Stmt. of Facts ¶ 93.

Equifax prevented Ms. Anderson from accessing her report so that she could dispute false accounts and information. Anderson Decl. ¶ 4. Equifax hampered Ms. Anderson's efforts to dispute false information. Anderson Decl. ¶ 5. Equifax lost or failed to maintain records of Ms. Anderson's communications. Anderson Decl. ¶ 17-18, 23-24. When Equifax did acknowledge Ms. Anderson's disputes, it made matters worse, not better. Anderson Decl. ¶ 22.

Even after manually separating Ms. Anderson's credit file in the "mixed file department," Equifax admits it continued to report a false accounts and information in her credit report. Def's Stmt. of Facts ¶ 102. The jury is clearly entitled to conclude that Equifax's conduct in this case was "reckless."

## <u>CONCLUSION</u>

For the reasons set forth above, there are genuine disputes as to material fact that must be decided by the jury. Plaintiff respectfully asks the Court to deny Equifax's motion for summary judgment.

DATED this 10th day of March, 2017.

Respectfully submitted,

s/ Justin M. Baxter
(*admitted pro hac vice*)
Justin M. Baxter
Baxter & Baxter, LLP
8835 SW Canyon Lane, Ste. 130
Portland, OR 97225
503-297-9031
Email: justin@baxterlaw.com

A. Scott Waddell  KS# 20955
Waddell Law Firm LLC
2600 Grand Blvd., Ste 580
Kansas City, MO 64108
816-914-5365
Email: scott@aswlawfirm.com

Bryce B. Bell  KS# 20866
Bell Law, LLC
2600 Grand Blvd., Ste 580
Kansas City, MO 64108
816-886-8206
Email: bbb@BellLawkc.com
**ATTORNEYS FOR PLAINTIFF**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served via CM/ECF to the following:

Lewis P. Perling
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309

G. Gabriel Zorogastua
Polsinelli PC
900 W. 48th Street, Ste. 900
Kansas City, MO 64112

Attorneys for Defendant Equifax Information Services, LLC

DATED this 10th day of March, 2017.

<u>s/ Justin M. Baxter</u>
Justin M. Baxter
Baxter & Baxter, LLP
8835 SW Canyon Lane, Ste. 130
Portland, OR 97225
503-297-9031
Fax: 503-297-9174
Email: justin@baxterlaw.com

A. Scott Waddell KS# 20955
Waddell Law Firm LLC
2600 Grand Blvd., Ste 580
Kansas City, MO 64108
816-221-2555
Fax: 816-221-2508
Email: scott@aswlawfirm.com

Bryce B. Bell KS# 20866
Bell Law, LLC
2600 Grand Blvd., Ste 580
Kansas City, MO 64108
816-221-2555
Fax: 816-221-2508
Email: bbb@BellLawkc.com
**ATTORNEYS FOR PLAINTIFF**
