IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANGELA P. ANDERSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:16-cv-02038-JAR-KGG |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND
JUDGMENT**

<u>INTRODUCTION</u>

Defendant Equifax Information Services, LLC's response to plaintiff's motion does not dispute the new evidence plaintiff submits. Equifax does not dispute that despite its lawyer's representation that Equifax had corrected plaintiff's credit file, Equifax is still reporting false information more than a year after this case was filed, including new false information that was not on prior reports. Equifax also does not dispute that it provided a consumer report to Bennington State Bank, despite plaintiff having no relationship with that entity.

Beyond the new evidence plaintiff has raised, Equifax has also failed to respond to plaintiff's arguments that neither § 1681e(b) nor § 1681i(a) were violated by the merger of plaintiff's file with Angela Bogart's file. Equifax ignores the consequences of the Court's decision: plaintiff will have to live with false credit reports for the rest of her life, and similarly situated consumers will have to file preemptive suits upon learning of mergers, before any cognizable injury, or else suffer a similar fate.

Finally, Equifax appears to concede that the Court's decision with respect to the § 1681b claim for the Chase Home Lending account review did not consider that "to review an account" is a purpose in the statute, instead now arguing that an "account review" is somehow different than "to review an account." Based on these concessions, the Court should grant plaintiff's motion.

<u>ARGUMENT</u>

I.   THE SECTION 1681e(b) AND 1681i(a) CLAIMS ARE NOT TIME BARRED.

A.   <u>Defendant Does Not Dispute that the Merger of Files Did Not Violate the FCRA.</u>

In her motion to alter or amend, plaintiff explained that, contrary to this Court's decision, the merger of plaintiff's file with Angela Bogart's was not a violation of either § 1681e(b) or

§ 1681i(a) and that each false consumer report and each dispute is a discrete violation of the statute. Pl.'s Mem. 4-11. Plaintiff explained that this Court misapprehended the Fifth Circuit's decision in *Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446, 449 (5th Cir. 1988), because the 2003 amendments to the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, did not change the application of § 1681p. Pl.'s Mem. 7-11. In response, defendant does not claim that a merger alone is a violation of either section of the FCRA and does not contest plaintiff's discussion of *Hyde*. On these bases alone, the Court should grant the motion.

Instead, defendant contends that because in 2005 Ms. Anderson suffered discrete violations of § 1681e(b) and 1681i(a)—an erroneous consumer report sent to Capital Federal Savings and a dispute of the inaccuracies in that report—she can never again bring claims against Equifax for subsequent violations of those same sections. Def.'s Opp. 4-5. Defendant cites no cases supporting its radical position that the defendant's violations of the FCRA in 2005 preclude plaintiff from remedying the defendant's recent, ongoing, and future violations.

Furthermore, plaintiff explained that contrary to the Court's reasoning, the proper application of *Hyde* would not extend the statute of limitations indefinitely. Pl.'s Mem. 9-10. Rather than address plaintiff's arguments, defendant labels them "new legal theories" and makes a vain effort to distinguish them. Def.'s Opp. 6. Defendant fails.

First, plaintiff cited § 1681i(a)(3)—not as some "new legal theory"—but to demonstrate that Congress considered and addressed the problem of non-meritorious repeat disputes. Pl.'s Mem. 9. Specifically, the FCRA provides a mechanism for a credit reporting agency (CRA) to terminate a reinvestigation of a dispute the CRA deems frivolous or irrelevant, including a repeat dispute. *See id.* Significantly, however, even when a CRA makes a determination that a dispute is non-meritorious, the statute still requires it to take action and notify the consumer of

the determination. A CRA may not merely ignore the consumer's dispute. However, under defendant's theory and this Court's decision, Equifax may henceforth ignore plaintiff's disputes with impunity. Defendant's only argument is that the statute does not use the word "redundant." Defendant's position is both true and irrelevant.

Plaintiff next cited the Tenth Circuit holding in *Solomon v. HSBC Mortgage Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010) to demonstrate that the Court of Appeals has held in the similar statutory context of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, that separate, discrete violations create separate liability, with a new limitations period that accrues independently as to each statutory violation. Pl.'s Mem. 9-10. That is because, as plaintiff argues throughout her motion, "[a]ny other rule would immunize debt collectors from later wrongdoing." *Solomon*, 395 F. App'x at 497 n.3. Defendant meekly attempts to undermine *Solomon* by characterizing the FCRA's five-year statute of limitations as a "statute of repose" without explaining why that should matter. Def.'s Opp. 7. Put simply, it does not matter in this case. The characterization of § 1681p as either a statute of limitations or repose has no bearing on when "the violation" occurs to *begin* the running of the limitations period. *See* 15 U.S.C. § 1681p. Instead, *Solomon* provides the answer: each discrete consumer report and each new dispute begins a new limitations period.

Defendant also attempts to distinguish the FCRA from the FDCPA (and thus distinguish *Solomon*) by listing the distinct requirements of various sections of the FDCPA. Def.'s Opp. 7. However, as several courts have recognized, the FCRA and FDCPA are structured in the very same way—*e.g.*, § 1681b (Permissible purposes of consumer reports); § 1681c (Requirements relating to information contained in consumer reports); § 1681c–1 (Identity theft prevention; fraud alerts and active duty alerts); § 1681c–2 (Block of information resulting from identity

theft); § 1681d (Disclosure of investigative consumer reports); § 1681e (Compliance

procedures); § 1681f (Disclosures to governmental agencies); § 1681g (Disclosures to

consumers); § 1681h (Conditions and form of disclosure to consumers); § 1681i (Procedure in

case of disputed accuracy); § 1681j (Charges for certain disclosures); § 1681k (Public record

information for employment purposes); § 1681l (Restrictions on investigative consumer

reports)—and are often interpreted similarly, *see, e.g.*, *Ramirez v. MGM Mirage, Inc.*, 524 F.

Supp. 2d 1226, 1237 (D. Nev. 2007); *Johnson v. Fed. Express Corp.*, 147 F. Supp. 2d 1268,

1275 (M.D. Ala. 2001). Thus, defendant has provided no substantive basis for this Court to

ignore to the Tenth Circuit's guidance in *Solomon*.

    B.  <u>The Court's Decision Leaves Plaintiff Unable to Remedy the Defendant's Recent,
Ongoing, and Future Violations of the FCRA.</u>

The consequences of this Court's decision to plaintiff are not speculative. In her motion,

plaintiff identified incorrect accounts, addresses, and other information in her most recent

August 24, 2017 credit report. *See* Pl.'s Mem. 11-12. The Court's ruling means that plaintiff will

be forced to live with false credit reports for the rest of her life, with no remedy. Doc. 52-1 at ¶ 8.

Equifax does not even acknowledge the continued false reporting or plaintiff's plight, let alone

attempt to correct it. And for good reason: should this Court's decision stand, Equifax will have

no obligation to ever remedy these errors in plaintiff's consumer file. Further, plaintiff is not

alone. Defendant does not dispute that under the Court's order, millions of consumers would be

compelled to file preemptive lawsuits or otherwise permanently waive their rights under the Fair

Credit Reporting Act.

The harm to the national consumer reporting system and to the consumer credit,

insurance, and other major economic sectors that rely on consumer reports that will result from

this Court's ruling follows from the truism that the FCRA does not require error free reports or

<div align="center">5</div>

provide a remedy for merely an erroneous report. Liability does not flow automatically from the mere fact that the CRA reports inaccurate information; instead, liability must flow from the CRA's failure to follow reasonable procedures.[1] The statute does not impose strict liability for inaccurate entries in consumer reports.[2] A CRA will not be liable if it merely reported inaccurate information on an individual's consumer report, provided that it followed reasonable procedures to ensure maximum possible accuracy.[3] Judge Crow succinctly summarized these rules almost thirty years ago: "The Act does not create strict liability for a credit reporting agency's errors. An inaccuracy in a report does not necessarily mean that a consumer has a cause of action or that the agency is automatically liable." *Jones v. Credit Bureau of Garden City, Inc.*, 703 F. Supp. 897, 901 (D. Kan. 1988).

---

[1] *Philbin v. Trans Union Corp.*, 101 F.3d 957, 964 (3d Cir. 1996) ("credit reporting agencies are liable only when inaccuracies are the result of their failure to follow reasonable procedures."); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995); *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982); *Ladner v. Equifax Credit Info. Serv., Inc.*, 828 F. Supp. 427 (S.D. Miss. 1993); *Jones v. Credit Bureau of Garden City*, 703 F. Supp. 897 (D. Kan. 1988).

[2] *Peart v. Shippie*, 345 Fed. Appx. 384 (11th Cir. 2009); *Sepulvado v. CSC Credit Serv.*, 158 F.3d 890, 895 (5th Cir. 1998); *Spence v. TRW, Inc.*, 92 F.3d 380 (6th Cir. 1996); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991); *Smith v. LexisNexis Screening Solutions, Inc.*, 76 F. Supp. 3d 651, 656 (E.D. Mich. 2014); *Shaunfield v. Experian Info. Solutions, Inc.*, 991 F. Supp. 2d 786 (N.D. Tex. 2014); *Toliver v. Experian Info. Solutions*, 973 F. Supp. 2d 707, 714 (S.D. Tex. 2013); *Hill v. Equifax Info. Serv.*, 974 F. Supp. 2d 865 (M.D.N.C. 2013); *Ogbon v. Beneficial Credit Serv., Inc.*, 2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013); *Lazarre v. JP Morgan Chase Bank* (Lazarre II), 780 F. Supp. 2d 1330 (S.D. Fla. 2011); *Sheldon v. Experian Info. Solutions, Inc.*, 2010 WL 3768362 (E.D. Pa. Sept. 28, 2010); *Gaft v. Mitsubishi Motor Credit*, 2009 WL 3148764 (E.D.N.Y. Sept. 29, 2009); *Elkins v. Equifax, Inc.*, 2009 WL 632128 (N.D. Ill. Mar. 9, 2009); *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 646 (S.D. Ala. 2007); *Anderson v. Trans Union, L.L.C.*, 345 F. Supp. 2d 963 (W.D. Wis. 2004).

[3] *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994); *Spence v. TRW, Inc.*, 92 F.3d 380 (6th Cir. 1996); *Collins v. Experian Credit Reporting Serv.*, 494 F. Supp. 2d 127 (D. Conn. 2007); *Jordan v. Equifax Info. Serv., L.L.C.*, 410 F. Supp. 2d 1349 (N.D. Ga. 2006).

This Court's ruling, with its imperative to consumers to file suit once on notice of inaccurate information, will inundate the federal districts courts with a mass of unnecessary preemptive filings, which in many cases could not even state a claim for relief. Equifax tellingly has offered no law or argument contesting the resulting havoc that this Court's ruling promises to promote, and indeed it has no answer to offer. This flaw vividly illustrates the legal error in this Court's ruling and the fact that Equifax cannot defend it.

Rather than admit that the Court's decision leaves plaintiff in dire straits, defendant argues that the Court should not consider the August 24, 2017 credit report because plaintiff could have discovered the recent false reporting earlier. Def.'s Opp. 8-11. Plaintiff had no reason to obtain her credit file because Equifax's lawyer had affirmatively represented to Ms. Anderson that her credit file had been corrected. Doc. 52-1 at ¶ 6.[4] Defendant does not challenge its misrepresentation or even address it.

---

[4] As stated by Judge Browning in *Leon v. Fedex Ground Package Sys., Inc.*, 163 F. Supp. 3d 1050, 1074 (D.N.M. 2016): "If an attorney is 'fully authorized to act and speak for the [party],' his or her statements are admissible as facts rather than as attorney opinions. *Williams v. Union Carbide Corp.*, 790 F.2d at 556. See *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir.1991)(reaffirming the 'rule that inconsistent prior pleadings should be made available for the jury's comparison' *Williams v. Union Carbide Corp.*, 790 F.2d at 555–56 ('It is the general rule that statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney.'); *United States v. Martin*, 773 F.2d 579, 583 (4th Cir.1985)(holding that statements made by attorney to an IRS auditor at the pretrial stage were admissible); *United States v. McKeon*, 738 F.2d 26, 27–34 (2d. Cir.1984)(holding that an opening statement made by an attorney is admissible in a later lawsuit against his client); *Laird v. Air Carrier Engine Serv., Inc.*, 263 F.2d 948, 953 (5th Cir.1959)('An attorney has wide authority in the conduct of litigation. He is chosen to speak for the client in Court. When he speaks in Court, whether it be on a formal trial or in an informal pretrial, he speaks for and as the client.'); *Athridge v. Rivas*, 421 F.Supp.2d 140, 151 (D.D.C.2006)(Facciola, M.J.)('First, although Attorney Starr may have drafted and signed Iglesias' answer, the statements contained therein are considered statements of Iglesias himself.') . . ." 163 F. Supp. 3d at 1074.

Finally, defendant argues that plaintiff is seeking to insert a new claim for reinsertion of previously deleted information. Def.'s Opp. 10. Defendant is mistaken. Plaintiff cited § 1681i(a)(5)(B) in order to demonstrate that Congress specifically provided that the reinvestigation requirement imposes an ongoing obligation. Pl.'s Mem. 7-12. Plaintiff does not seek leave to amend her complaint and defendant's arguments are inapposite.

II.  EQUIFAX VIOLATED SECTION 1681b.

Equifax is prohibited from furnishing any reports unless it has reason to believe the prospective user intends to use the reports for a permissible purpose. § 1681b. Defendant must not furnish reports if it has reasonable grounds for believing the reports are being used impermissibly. § 1681e(a). Plaintiff explained that the Court incorrectly concluded that plaintiff could not state a claim under § 1681b because the Court did not consider that the statutory definition of "consumer report" incorporates account reviews and information that is collected for any authorized purpose, even if not used or expected to be used for that purpose. Pl. Mem. 13-16.

Equifax ignored these requirements, and thus it violated plaintiff's privacy by furnishing her consumer report to Chase Home Lending and Bennington State Bank. The harm has already occurred because plaintiff's private information has been disclosed to these end users. Defendant's arguments to the contrary are without merit and the Court should reject them.

A.  The Chase Home Lending Account Review Violated § 1681b.

Defendant admits that it "provided to Chase Home Lending for the AR-Chase Home Lending . . . the consumer's name and address and that she had a mortgage inquiry on her file on the previous day." Def's Response at 17. Clearly, this was credit information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation,

personal characteristics, or mode of living.

Defendant presents a new argument that the "account review" inquiry on plaintiff's credit file was not an inquiry for the purpose "to review an account to determine whether the consumer continues to meet the terms of the account" under § 1681b(a)(3)(F)(i)-(ii). This does not make sense. Defendant's credit report itself demonstrates that the ostensible purpose was not a "hard inquiry" initiated by the consumer. Doc. 52-1 at 83. ("These are inquiries made by companies with whom you have applied for a loan or credit.") By contrast, defendant's credit report includes account reviews in its definition of "soft inquiries." Doc. 52-1 at 84 ("These are inquiries, for example, from companies making promotional offers of credit, periodic account reviews by an existing creditor or your own request to check your credit file.") However, if defendant is correct, and this was neither a hard inquiry nor a soft inquiry, then defendant has admitted that it provided a consumer report with no permissible purpose under § 1681b.

Further recognizing the weakness of its argument, defendant now implicitly attempts to argue that plaintiff lacks standing. *See* Def.'s Opp. 11-12 (citing *Spokeo v. Robins*, 136 S. Ct. 1540 (2016)). *Spokeo* acknowledged that Congress "is well positioned to identify intangible harms that meet minimum Article III requirements." The Supreme Court has acknowledged that "Congress enacted the FCRA…to protect consumer privacy." *Safeco v. Burr*, 551 U.S. 47, 52 (2007); *TRW v. Andrews*, 534 U.S. 19, 23 (2001). When it enacted the FCRA, Congress said the Act was intended to protect consumers' right to privacy in consumer reports. It prefaced the FCRA with its finding that "[t]here is a need to insure that credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the individual right to privacy." §1681(a)(4).

Here, plaintiff can demonstrate a concrete injury to her privacy. In *Kruckow v. Merchants Bank*, No. CV 16-2418 (DWF/DTS), 2017 WL 3084391, at *2 (D. Minn. July 19, 2017), the district court explained: "Congress has allowed a person to access consumer reports but only when the person has a permissible purpose. Requiring a proper purpose works as bulwark against intrusions into the sensitive information contained in a consumer report. Thus, when a plaintiff alleges that the person obtained the plaintiff's consumer report without a permissible purpose, the plaintiff has adequately alleged a concrete injury to her privacy." 2017 WL 3084391, at *2, *citing, In re Ocwen Loan Servicing LLC Litig.*, Civ. No. 16-483, 2017 WL 1289826, at *5 (D. Nev. Mar. 3, 2017); *Firneno v. Nationwide Mktg. Servs., Inc.*, Civ. No. 14-10104, 2017 WL 85831, at *3 (E.D. Mich. Jan. 10, 2017); P*errill v. Equifax Info. Servs.*, LLC, 205 F. Supp. 3d 869, 875 (W.D. Tex. 2016).

B.  The Bennington State Bank Hard Inquiry Violated § 1681b.

Defendant does not dispute that it sent a consumer report to Bennington State Bank on September 1, 2015. Defendant argues only that plaintiff cannot show the other elements of her § 1681b claim. Def.'s Opp. 15. That is incorrect. Defendant's own credit report demonstrates admissible evidence that it did not have a permissible purpose to provide a consumer report to Bennington State Bank: "These are inquiries made by companies with whom you have applied for a loan or credit." Doc. 52-1 at 83. But plaintiff did not apply for a loan or credit with Bennington State Bank. Doc. 52-1 at ¶ 9. Furthermore, defendant's own credit report demonstrates damages:

> "There are two types of inquiries - those that may impact your credit rating/score and those that do not. Hard Inquiries that may impact your credit rating/score . . ." Doc. 52-1 at 83.

In addition, as with the Chase Home Lending account review inquiry, the breach of plaintiff's privacy in and of itself constitutes actual damages sufficient to defeat summary judgment. *Kruckow*, *supra*, 2017 WL 3084391, at *2.

<u>CONCLUSION</u>

Equifax takes this Court's granting of summary judgment to its logical end – Equifax does not attempt to rebut or explain why it is still slandering plaintiff's credit more than a year after this case was filed. It does not need to, because under the Court's ruling, it may do so with impunity for the rest of Ms. Anderson's life. Equifax has not stopped reporting false accounts and information to Ms. Anderson's creditors and Equifax has not stopped sending Ms. Anderson's private information to Ms. Bogart's creditors. For the reasons stated, this Court should grant plaintiff's motion.

DATED this 20th day of October, 2017.

<div style="margin-left: 40%;">

Respectfully submitted,

<u>/s/ Mark W. Schmitz</u>
Bryce B. Bell KS#20866
Mark W. Schmitz KS#27538
Bell Law, LLC
2600 Grand Blvd., Ste 580
Kansas City, MO 64108
T: 816-886-8206
Fax: 816-816-8500
Email: bbb@BellLawkc.com

Justin M. Baxter (*pro hac vice*)
Baxter & Baxter, LLP
8835 SW Canyon Lane, Ste. 130
Portland, OR 97225
503-297-9031
Fax: 503-297-9174
Email: justin@baxterlaw.com

</div>

A. Scott Waddell KS#20955
Waddell Law Firm LLC
2600 Grand Blvd., Ste 580
Kansas City, MO 64108
T: 816-914-5365
Fax: 816-817-8500
Email: scott@aswlawfirm.com
**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and accurate copy of the foregoing document was filed with the Court's e-Filing system and thereby served upon all attorneys of record on October 20, 2017.

<u>/s/ Mark W. Schmitz</u>