IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELA ANDERSON,

    **Plaintiff,**

    v.

EQUIFAX INFORMATION SERVICES LLC,

    **Defendant.**

Case No. 16-CV-2038-JAR

## MEMORANDUM AND ORDER

Plaintiff Angela Anderson filed suit against Defendant Equifax Information Services LLC alleging violations of the Fair Credit Report Act ("FCRA").[1] This matter comes before the Court on Plaintiff's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) (Doc. 52), in which she asks the Court to reconsider its Memorandum and Order granting Defendant's Motion for Summary Judgment.[2] The motion is fully briefed, and the Court is prepared to rule. For the reasons explained more fully below, Plaintiff's motion to alter or amend is granted in part and denied in part.

## I.   The Court's Summary Judgment Rulings

Plaintiff alleged in this matter that Defendant erroneously mixed her credit file with that of another consumer, Angela Bierman-Bogart, sold consumer credit reports that included false accounts and information belonging to that other consumer, and failed to those remove false accounts and information from her credit file in response to Plaintiff's numerous requests. Each of the two counts in the Complaint allege Defendant violated three separate provisions of the

---

[1] 15 U.S.C. §§ 1681–1681x.

[2] Doc. 49.

FCRA relating to the investigative and reporting duties for credit reporting agencies ("CRAs"). Specifically, § 1681e(b) requires a credit reporting agency to follow reasonable procedures to ensure maximum accuracy, § 1681i requires a credit reporting agency to comply with certain reinvestigation requirements, and § 1681b requires a credit reporting agency to provide a consumer's credit file to companies only if it has determined there is a permissible purpose. Count I alleged negligent violations and Count II alleged willful violations of all three provisions.

On August 3, 2017, this Court granted Defendant's motion for summary judgment on all three FCRA violations asserted in the Complaint. First, the Court concluded that the § 1681e(b) "maximum possible accuracy" and § 1681i(a) "reasonable reinvestigation" claims were time-barred. Second, the Court determined that summary judgment on Plaintiff's § 1681b "permissible purpose" violation must be granted in Defendant's favor because Defendant did not provide a "consumer report" within the meaning of the statute.

First, the Court construed the statute of limitations provision in § 1681p:

> An action to enforce any liability created under this subchapter may be brought . . . not later than the earlier of—
> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.[3]

The Court acknowledged a split of authority among the federal courts as to whether the limitations period accrues upon the discovery of each issuance of a credit report that violates the Act, or instead whether the clock begins to run upon the discovery of the first instance of a repeated violation.[4] There is no Tenth Circuit authority on this issue. The Court therefore

---

[3] 15 U.S.C. § 1681p.
[4] Doc. 49 at 18–20.

followed the line of cases holding that the statute begins to accrue upon discovery of the first violation that forms the basis of the plaintiff's claims. Accordingly, the Court determined that Plaintiff's claims for maximum possible accuracy and reasonable reinvestigation are time-barred because Plaintiff first discovered her file was mixed with Bogart's file in 2005, first disputed the file in March 2005, and Defendant allegedly failed to conduct a reasonable reinvestigation in 2005. The Court concluded that Plaintiff had two years from March 2005 to bring her action, and her limitations period therefore ran in March 2007, many years before she filed this action in 2016.

Plaintiff's third alleged FCRA violation was that the inquiry section of her August 31, 2015 credit report showed Defendant provided information to Chase Home Lending for an "account review" on August 18, 2015, in violation of the FCRA's permissible purpose provision. The Court found that this claim was timely, however, there was no genuine issue of material fact that the information provided to Chase Home Lending was not a "consumer report" under the FCRA. The Court determined, based on the uncontroverted facts in the record, that the only information provided to Chase Home Lending on the inquiry dated August 18, 2015, was the consumer's name and address, and that Defendant's customer made a mortgage inquiry on her file on August 17, 2015. This information was not used or expected to be used to determine eligibility for credit, therefore as a matter of law the Court found there could be no permissible purpose violation.

## II. Legal Standard

Under Rule 59(e), grounds warranting a motion to alter or amend judgment include: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to

correct clear error or prevent manifest injustice.[5] "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[6] Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[7] A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider.[8] Whether to grant a motion to reconsider is left to the Court's discretion.[9]

## III.   Discussion

Plaintiff moves to alter or amend on two grounds: (1) manifest injustice; and (2) the availability of new evidence. As to manifest injustice, Plaintiff challenges both of the Court's summary judgment rulings—that the statute of limitations bars her maximum possible accuracy and reasonable reinvestigation claims, and that there was no permissible purpose violation because the information Defendant provided to Chase Home Lending in August 2015 was not a consumer report within the meaning of the statute. Additionally, Plaintiff submits her credit file dated August 24, 2017, obtained after the Court's summary judgment order, in support of her arguments that both of the Court's rulings were erroneous, and argues that her new credit report demonstrates fresh violations of the FCRA. The Court first considers whether the new evidence

---

[5]*Servants of Paracelete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

[6]*Id.*

[7]*Steele v. Young,* 11 F.3d 1518, 1520 n.1 (10th Cir.1993); *see also* Charles Alan Wright, et al., Federal Practice & Procedure: Civil 2d § 2810.1 ("The Rule 59(e) motion may not be used . . . to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

[8]*Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, No. 11-2059-KHV, 2013 WL 139750, at *1–2 (D. Kan. Jan. 10, 2013) (citing *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 370 F. Supp. 2d 1130, 1132 (D. Kan. 2005), *aff'd*, 191 F. App'x 822 (10th Cir. 2006)).

[9]*Coffeyville*, 748 F. Supp. 2d at 1264 (citing *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

submitted by Plaintiff with the motion to alter or amend should be considered by the Court. Then, the Court takes Plaintiff's claims in reverse order, addressing first the permissible purpose violation, and then the maximum possible accuracy and reasonable reinvestigation claims.

### A.     New Evidence

Plaintiff asks the Court to consider new evidence of FCRA violations that she first discovered after the Court's summary judgment ruling, when she requested and obtained an updated credit report dated August 24, 2017, reflecting false accounts and information that did not appear on her August 31, 2015 credit report. "When supplementing a Rule 59(e) motion with additional evidence, the movant must show . . . that the evidence is newly discovered [and] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence."[10]

Plaintiff asserts in her attached affidavit that after September 2015, Defendant would not provide her with copies of her credit report. But her original affidavit makes no mention of this fact. Her new affidavit references the fact that her lawyers attempted to identify false accounts and information so that Defendant could correct her file during the pendency of this lawsuit. Both in Plaintiff's affidavit, and in the reply brief, she asserts that defense counsel misrepresented that the disputed false information had been corrected. While this may be true, it does not explain why Plaintiff would not seek, at least through discovery, a copy of her credit report during the pendency of this case. The Court is puzzled as to why Plaintiff could not and did not obtain a copy of Defendant's credit report between the dates of August 31, 2015, before this case was filed, and August 24, 2017, after the Court's summary judgment ruling. Plaintiff's assertions in her affidavit are insufficient to convince the Court that Plaintiff's counsel made

---

[10] *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 101 (10th Cir. 2012) (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992)).

diligent yet unsuccessful efforts to discover an updated credit report for Plaintiff during the pendency of this case. Accordingly, the Court declines to consider this evidence in support of Plaintiff's motion to alter or amend.[11] The Court proceeds to review its summary judgment rulings on the basis of the previously-stated uncontroverted facts, which this Court incorporates by reference.[12]

### B. Permissible Purpose Violation

Plaintiff challenges this Court's ruling that the Chase Home Lending inquiry on Plaintiff's August 31, 2015 credit report was not a "consumer report" under the statute. In its August 3 Order, the Court found no evidence that the entry on Plaintiff's credit report, "AR-Chase Home Lending 08/18/2015," was a "consumer report" as that term is defined by the FCRA. The uncontroverted facts demonstrate that this item was only listed in the "soft inquiry" section of Plaintiff's credit report, and Defendant submitted evidence that the only information provided by Defendant to Chase Home Lending was the consumer's name, address, and the fact that Defendant's customer made a mortgage inquiry on her file on August 17, 2015. Plaintiff argues that the Court misconstrued the statutory definition of "consumer report," and that newly discovered evidence shows Defendant continues to violate § 1681b.

Under § 1681b(a)(3)(A), a CRA "may furnish a consumer report" only under certain circumstances. Under § 1681a(d)(1), "consumer report" is defined as

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is

---

[11]To the extent Plaintiff seeks leave to amend the Complaint to allege further violations, the Court declines to consider such a request in the context of a motion to alter or amend. A plaintiff may not amend the complaint after judgment unless and until the judgment has been vacated. *Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087–88 (10th Cir. 2005).

[12]Doc. 49 at 3–14.

> used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

Section 1681b, referenced in subsection (d)(1)(C) of the consumer report definition, includes a list of circumstances under which a CRA may furnish a consumer report, including "[t]o a person which it has reason to believe . . . (F) otherwise has a legitimate business need for the information . . . (ii) to review an account to determine whether the consumer continues to meet the terms of the account."[13]

Relying on the "AR" notation on her 2015 credit report, Plaintiff argued on summary judgment, and again in her motion to alter or amend, that the Chase Home Lending inquiry constitutes a consumer report because it was used to "review an account," under § 1681b(a)(3)(F)(ii). But the Court agrees with Defendant that Plaintiff appears to conflate the "AR" designation on the credit report presented to the Court on summary judgment, with the statutory text in § 1681b(a)(3)(F)(ii). Plaintiff provided no evidence in opposition to summary judgment that either she or Bogart had an account with Chase Home Lending, or that the information provided to Chase Home Lending was used to determine whether Plaintiff (or Bogart for that matter) continues to meet the terms of an account. To the contrary, Defendant produced evidence that the only information provided to Chase Home Lending was the consumer's name and address, and the fact that the consumer had a mortgage inquiry on her file the previous day. There was no information provided to Chase Home Lending that would allow it to determine whether the consumer "continues to meet the terms of [an] account."

---

[13] 15 U.S.C. § 1681b(a)((3)(F)(ii).

7

Further, the Court has reviewed the cases relied upon by Plaintiff and is not persuaded that they dictate a contrary result.  These cases either reference the use of a consumer report to determine if a consumer continues to be eligible for an account,[14] or whether the account must be open to meet this provision,[15] or the parameters of the "permissible purpose."[16]  None support the contention that a credit report notation such as the one at issue in this case is sufficient to meet the permissible purpose provision in § 1681b(a)(3)(F)(ii).

 Plaintiff again points to her August 24, 2017 credit report as evidence of continued violations of § 1681b, and because it includes language that arguably supports Plaintiff's interpretation of the "AR" designation on the Chase Home Lending entry.  For the same reasons explained above, the Court denies Plaintiff's motion to alter or amend on the basis of this new evidence because Plaintiff has not made a sufficient showing of diligence to obtain an updated credit report during discovery, or at least before responding to the motion for summary judgment.  According to her affidavit, although Defendant's counsel apparently assured her that the false and inaccurate information in her credit report associated with Bogart had been removed, her counsel failed to obtain a credit report to verify these representations.  There is no

---

[14] *See Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 938 (S.D. Ohio 2008) (finding no violation of permissible purpose provision based on § 1681b(a)(3)(F)(ii) "where there is no evidence that as of the date of the account review, Defendant intended to use Plaintiff's information in connection with a credit transaction involving Plaintiff. There were no credit transactions contemplated between the parties, nor was there an account upon which to collect."); *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 820 (W.D. Ky. 2003) ("§ 1681b(a)(3)(F)(ii) permits the use of a credit report to determine whether a consumer continues to be eligible for a benefit.")

[15] *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 820 (W.D. Ky. 2003) ("The problem with this argument is that there was no outstanding debt and, consequently, there was no 'account' to collect on."); *Saumweber v. Green Tree Servicing, LLC*, No. 13-cv-3628, 2015 WL 2381131, at *4 (D. Minn. May 19, 2015) (finding a credit relationship existed between the borrower and the lender, therefore production of a credit report to the lender was for a permissible purpose); *Vanaman v. Nationstar Mortg., LLC*, No. 2:15-CV-00906-KJD-NJK, 2017 WL 1097189, at *3 (D. Nev. Mar. 22, 2017) (considering whether conducting  "soft pull" of consumer's credit report after account closed was for a legitimate purpose); *Banga v. First USA, N.A.*, 29 F. Supp. 3d 1270, 1278–79 (N.D. Cal. 2014) (finding it permissible for creditor to obtain consumer's account under this subsection after the account is closed).

[16] *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 187 (D.N.J. 2012) (finding no evidence to support argument that "soft pull" is an impermissible purpose under FCRA but proceeding to consider whether the creditor had a permissible purpose in initiating one under different subsection).

evidence about any attempts by counsel to obtain this information during discovery, or at any time before the response to the summary judgment motion was due. Plaintiff has failed to demonstrate diligence in obtaining an updated credit report during the pendency of this action—an action premised entirely on information contained therein. Therefore, the Court cannot find that the August 24, 2017 credit report is new evidence that should be considered under Rule 59.

Accordingly, the Court denies Plaintiff's motion to alter or amend the Court's August 3, 2017 Order granting summary judgment in favor of Defendant on the permissible purpose violation under 15 U.S.C. § 1681b.

### B. Maximum Possible Accuracy and Reasonable Reinvestigation Claims

#### 1. Statute of Limitations

As to the Court's decision that the maximum possible accuracy and reasonable reinvestigation claims are time-barred, Plaintiff argues: (1) the merger of Plaintiff's and Bogart's files did not trigger FCRA violations, thus the Court erred in finding that the claims accrued when Plaintiff discovered the merger; (2) the Court misapprehended certain legal authority in finding that the claims are time-barred; and (3) Defendant continues to violate the FCRA even after the Court's summary judgment ruling, providing evidence of separate FCRA violations for which the statute of limitations has not run.

The statute of limitations on these claims begins to run two years after the date of discovery by the plaintiff of "the violation that is the basis for such liability."[17] Plaintiff argues that the Court erred in finding that Plaintiff's discovery of the account merger with Bogart's file caused the FCRA statute of limitations to accrue on her maximum possible accuracy and reasonable reinvestigation claims because the merger did not constitute violations of those two

---

[17] 15 U.S.C. § 1681p.

9

provisions. She contends that this finding runs counter to the plain language of the two statutory provisions at issue, and the structure of the FCRA. As described more fully below, the Court agrees that it erred in characterizing the FCRA violations as "the merger of her file with Angela Bierman-Bogart and the failure to investigate the dispute."[18]

Section 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Plaintiff argues that each preparation of a consumer report that fails to follow maximum possible accuracy procedures is a violation of this provision. Plaintiff comes forward with evidence that Defendant prepared such consumer reports within the statute of limitations—the two years preceding her filing of the Complaint on January 19, 2016. Defendant prepared these credit reports in 2015 with new and different accounts and information that belonged to Bogart, which Plaintiff first discovered when she applied to refinance her mortgage in August 2015. The statute applies "whenever a consumer reporting agency prepares a consumer report" that fails to follow procedures that will assure maximum possible accuracy. While it is true that Plaintiff first discovered that Defendant allegedly prepared mixed credit reports for Plaintiff as far back as 2005, it continued to prepare such reports with additional, different inaccurate information. For example, it is uncontroverted that on Plaintiff's August 31, 2015 credit report, new accounts appeared for Barclays Bank Delaware (opened March 7, 2014), Bennington State Bank (opened in July 10, 2014), and Citicards CBNA (opened January 9, 2014), and a new address in Salina, Kansas was first reported in August 2015. Despite several attempts by phone and in writing to dispute these inaccuracies between August 21, 2015 and September 4, 2015, the uncontroverted facts show

---

[18] *See* Doc. 49 at 22, 23.

10

that Plaintiff received her 54-page credit report on September 9, 2015, in which Defendant actually *replaced* her information with Bogart's information.  The Court finds that under § 1681e, the August 2015 credit report was a separate violation of the statute, which was discovered within the two-year statute of limitations.

> Under § 1681i(a),
>
>> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

Under this provision, Plaintiff argues that each item of incomplete or inaccurate information reported by the consumer triggers the CRA's duty to reinvestigate.  Again, while it is true that Plaintiff first disputed her file in 2005, the statute covers the completeness or accuracy of "any item of information contained in a consumer's file" when it is disputed by the consumer.  Plaintiff disputed her account in 2015 on the basis of new information that was brought to her attention when she refinanced her mortgage.  This information postdated any prior dispute, as it included accounts that were created in 2014, and a new address that was first reported in 2015.  Therefore, the alleged § 1681i violations include transactions that occurred within the statute of limitations.

    The Court further concludes that upon closer examination of Plaintiff's alleged statutory violations, the case of *Bittick v. Experian Information Solutions, Inc.*,[19] does not support a finding that Plaintiff's 2015 claims are time-barred.  In *Bittick*, the plaintiff alleged the same

---

[19] 419 F. Supp. 2d 917, 918–19 (N.D. Tex. 2006).

11

FCRA violations as in this case, based on Experian's confusion of her with another consumer who had a similar name but lived in another state.[20] That court acknowledged that "each transaction involving a consumer report issued by the agencies must be examined to determine whether a claim based on that transaction is time-barred."[21] In that case, all of the *transactions* the plaintiff challenged accrued before the two-year statute of limitations period.[22] As the court pointed out in that case, the only activity that occurred within the statute of limitations was the plaintiff's "additional report to the agencies that the information was incorrect."[23] The court concluded that to allow this additional report about the same erroneous information to restart the limitations clock would indefinitely extend the limitations clock; it also concluded that the plaintiff failed to allege that the other consumer's information was removed and then added back in.[24]

Here, there is evidence that new transactions appeared on Plaintiff's credit report within the statute of limitations, distinct from the transactions she complained of in 2005, and that she lodged a new dispute upon discovery of these new transactions. Plaintiff does not allege that she merely sent another complaint letter to Defendant about the same inaccuracies that she reported in 2005. As such, much like Judge Lungstrum's *Brown* case discussed by this Court in its August 3 Order,[25] it was unnecessary to determine whether *Bittick*, or *Hyde* controls the statute of limitations question. Even under *Bittick*'s stricter statute of limitations analysis, Plaintiff's

---

[20] *Id.* at 918.

[21] *Id.* at 919.

[22] *Id.*

[23] *Id.*

[24] *Id.*; *see also Hancock v. Charter One Morg.*, No. 07-15118, 2008 WL 2246042, *2–3 (E.D. Mich. May 30, 2008) (applying *Bittick* and concluding that claims were untimely where the plaintiffs complained of the *same erroneous transaction* repeatedly, and argued that each transmission of the same erroneous credit report is a violation of the FCRA and restarts the clock).

[25] *Brown v. Equifax, Inc.*, No. 13-2373, 2013 WL 5769925, at *3–4 (D. Kan. Oct. 24, 2013).

FCRA claims under §§ 1681e and 1681i are timely, insofar as they allege new violations that accrued after January 1, 2014.

In sum, the Court grants Plaintiff's motion to alter or amend as to the timeliness of Plaintiff's claims under §§ 1681e and 1681i.  When the alleged statutory violations are considered in the context of the plain language of these two statutory provisions, discrete violations occurred within the limitations period.  Plaintiff therefore presents timely claims that she discovered separate and discrete violations of these two FCRA provisions after January 1, 2014, two years before the Complaint was filed.

### 2. Actual Damages

The Court previously did not reach Defendant's argument on summary judgment that Plaintiff did not suffer actual damages.  Because this Court grants Plaintiff's motion to alter or amend as to the timeliness of her §§ 1681e and 1681i claims that accrued after January 1, 2014, it now must proceed to consider Defendant's argument that Plaintiff suffered no actual damages caused by those violations.

Under the FCRA actual damages "may include humiliation and embarrassment, even if the consumer suffered no out-of-pocket losses."[26]  Plaintiff's affidavit attached to her response to the motion for summary judgment[27] indicates that she suffered stress due to Defendant's FCRA violations, and that she worried about identity theft, given that Bogart had access to her personal financial information as a result of the violations.  She spent less time with her children, her sleeping and eating patterns were disrupted, and the quality of her work was affected and compromised.  Her affidavit further establishes that the stress caused by the Citibank refinance caused her to break out in hives all over her body, and angioderma caused her face, tongue, and

---

[26]*Tilley v. Global Payments*, 603 F. Supp. 2d 1314, 1325 (D. Kan. 2009) (footnote and citation omitted).
[27]Doc. 44-3.

13

abdomen to swell in November 2015. This is sufficient evidence to create a triable issue on emotional damages, even assuming Plaintiff suffered no economic damages under the FCRA.[28] Viewing the record in the light most favorable to Plaintiff, there is a genuine issue of material facts as to the actual damages associated with these FRCA violations.

### 3. Willful Violation

The Court also did not reach Defendant's argument on summary judgment that there is no evidence to support Plaintiff's claim that the FCRA violations were willful. Under the FCRA, if a violation is negligent, the consumer is entitled to actual damages.[29] If the violation is willful, the consumer may recover actual damages or statutory damages, as well as punitive damages.[30] Liability for "willfully fail[ing] to comply" with the FCRA includes knowing and reckless disregard of the law.[31] Recklessness is generally understood to be "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"[32] Under the FCRA, a company "does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."[33]

Defendant, without reference to specific evidence in this record, argued that summary judgment as to willfulness is warranted based on a lengthy string citations to cases where

---

[28]*Tilley*, 603 F. Supp. 2d at 1325.

[29]15 U.S.C. § 1681*o*.

[30]*Id.* § 1681n(a).

[31]*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007).

[32]*Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

[33]*Id.* at 69.

14

"Courts consistently grant summary judgment . . . under these circumstances,"[34] or grant summary judgment based on similar procedures. Defendant further argues that Plaintiff's expert, Evan Hendricks, fails to tether his opinion on willfulness to the facts of this case.

The Court need not delve into Defendant's motion to exclude Plaintiff's expert at this time in order to find summary judgment is not warranted on Plaintiff's claim of willfulness.[35] Instead, the Court looks at the uncontroverted facts to determine whether the evidence could support a jury's finding of willfulness on the remaining FCRA claims. And the Court declines to discuss the myriad cases to which Defendant cites given its failure to discuss how they apply to the summary judgment evidence in this case.

Viewed in the light most favorable to Plaintiff, a reasonable fact finder could conclude from the summary judgment evidence that Defendant willfully violated the maximum possible accuracy and reasonable reinvestigation provisions. Plaintiff has submitted evidence that she pled with Defendant to fix her credit report as early as 2004; that after learning of new false information in August 2015, she disputed the information after several years of being effectively locked out of her credit report; that she repeatedly wrote and called Defendant to correct her report so that she could qualify for a new mortgage, receiving inconsistent advice and information; that in disputing false information in 2015, Defendant was argumentative and would not accept her attempts to lodge a dispute under her own name; that after receiving evidence of her identity, Defendant continued to include Bogart's false information in her credit file; and that even after attempting to separate Plaintiff's file from Bogart's, Defendant continued

---

[34]Doc. 37 at 27–28.

[35]The Court previously found Defendant's motion to exclude to be moot in light of its finding that summary judgment should be granted on all claims. Once jurisdiction returns to this Court, after the appeal is disposed of, it will set this matter for a pretrial conference to discuss reopening the motion to exclude and resetting this matter for trial.

to include false information and failed to notify Plaintiff about the status of her dispute until her deposition in this case. The Court therefore denies summary judgment on the issue of willfulness.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) (Doc. 52) is **granted in part and denied in part**. The motion is granted as to the Court's summary judgment ruling that the maximum possible accuracy and reasonable reinvestigation claims are time-barred. The motion is otherwise denied. The Clerk is directed to vacate the Judgment (Doc. 50), and this case will proceed to trial on the maximum possible accuracy and reasonable reinvestigation claims, including whether those violations were willful.

**IT IS SO ORDERED.**

Dated: November 13, 2017

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              CHIEF UNITED STATES DISTRICT JUDGE