IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELA ANDERSON,

    Plaintiff,

    v.

EQUIFAX INFORMATION SERVICES, LLC,

    Defendant.

Case No. 2:16-CV-2038-JAR

# MEMORANDUM AND ORDER

Plaintiff Angela Anderson filed suit against Defendant Equifax Information Services, LLC alleging violations of the Fair Credit Report Act ("FCRA").[1] This matter comes before the Court on Defendant's Motion to Exclude or Limit the Testimony of Plaintiff's Expert, Evan Hendricks (Doc. 38), filed on February 17, 2017. The motion is fully briefed and the Court is prepared to rule. For the reasons explained below, Defendant's motion to exclude is granted in part and denied in part.

## I.    Factual and Procedural Background

Plaintiff alleges in this matter that Defendant erroneously mixed her credit file with that of another consumer, Angela Bierman-Bogart, sold consumer credit reports that included information belonging to that other consumer, and failed to remove those accounts and information from her credit file in response to Plaintiff's numerous requests. Each of the two counts in the Complaint alleged Defendant violated three separate provisions of the FCRA relating to the investigative and reporting duties for credit reporting agencies ("CRAs").

---

[1] 15 U.S.C. §§ 1681–1681x.

Specifically, § 1681e(b) requires a CRA to follow reasonable procedures to ensure maximum accuracy, § 1681i requires a CRA to comply with certain reinvestigation requirements, and § 1681b requires a CRA to provide a consumer's credit file to companies only if it has determined there is a permissible purpose. Count I alleged negligent violations and Count II alleged willful violations of all three provisions.

On August 3, 2017, this Court granted Defendant's motion for summary judgment on all three FCRA violations asserted in the Complaint. First, the Court concluded that the § 1681e(b) "maximum possible accuracy" and § 1681i(a) "reasonable investigation" claims were time-barred. Second, the Court determined that summary judgment on Plaintiff's § 1681b "permissible purpose" violation must be granted in Defendant's favor because Defendant did not provide a "consumer report" within the meaning of the statute.

On November 13, 2017, the Court granted in part and denied in part Plaintiff's motion to alter or amend the judgment. The Court denied Plaintiff's motion as to her permissible purpose claim. The Court granted her motion as to her maximum possible accuracy and reasonable reinvestigation claims, finding that these claims are not time-barred and that genuine disputes of material fact remain as to her allegations of actual damages and the issue of willfulness. The Court declined to rule on Defendant's motion to exclude or limit the testimony of Plaintiff's expert in the course of ruling on Plaintiff's motion to alter or amend the judgment, but explained that it would reopen the motion after the pretrial conference and after this matter was reset for trial. The Court reopened Defendant's motion on January 10, 2018.[2]

---

[2]Doc. 73.

2

## II. Legal Standard

The Court has broad discretion in deciding whether to admit expert testimony.[3] Generally,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[4]

The proponent of expert testimony bears the burden of establishing its admissibility.[5] In order to determine whether an expert opinion is admissible, the Court performs a two-step analysis. First, the court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion.[6] "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."[7]

Second, the court "must determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his discipline.'"[8] To determine reliability, the Court must assess "whether the reasoning or methodology underlying the testimony is scientifically

---

[3]*Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996).

[4]Fed. R. Evid. 702.

[5]*Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001) (citations omitted); *see* Fed. R. Evid. 702.

[6]*United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *Ralston*, 275 F.3d at 969.

[7]*Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092–93 (W.D. Okla. 2009) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

[8]*Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

valid."[9] Expert testimony may be based "upon professional studies or personal experience," so long as the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[10] Although an expert opinion "must be based on facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . absolute certainty is not required."[11] And it is not necessary to prove that the expert is "indisputably correct," but only that the "method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements."[12]

The Supreme Court's opinion *Daubert*[13] sets forth a non-exhaustive list of four factors that the trial court may consider when conducting its inquiry under Rule 702: (1) whether the theory used can be and has been tested; (2) whether theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community.[14] But "the gatekeeping inquiry must be tied to the facts of a particular case."[15]

Occasionally, courts allow generalized expert testimony to be admitted to explain general or background information. The Advisory Committee's note to Fed. R. Evid. 702 explains that

> it might be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. . . . For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be

---

[9]*BG Tech., Inc. v. Ensil Int'l Corp.*, 464 F. App'x 689, 703 (10th Cir. 2012).

[10]*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1998) (quotations omitted).

[11]*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

[12]*Id.*

[13]*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).

[14]*Id.* at 593–94.

[15]*Kumho Tire*, 526 U.S. at 150 (quotations omitted).

4

qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.[16]

It is within the discretion of the trial court to determine how to perform its gatekeeping function under *Daubert*.[17] The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated.[18] In this case, the parties have not requested a hearing on this motion. The *Daubert* issues have been fully and thoroughly briefed by the parties. The Court has carefully reviewed the extensive exhibits filed with the motions, including the expert's written reports and deposition testimony. The Court finds this review is sufficient to render a decision without conducting an oral hearing.

**III. Discussion**

Defendant moves to exclude or limit the testimony of Plaintiff's expert, Evan Hendricks, arguing that he is not qualified to render an expert opinion and that his opinions are not reliable. Specifically, Defendant moves to exclude Hendricks's testimony regarding the following topics: (1) Defendant's procedures and "inner workings"; (2) Plaintiff's damages and damages typically suffered by victims of credit reporting violations; (3) Defendant's state of mind (i.e. whether any FCRA violations were willful); (4) legal opinions, such as the adequacy of Defendant's reinvestigation procedures; (5) prior cases involving Defendant and consent decrees Defendant has entered into; and (6) various factual issues. Plaintiff argues that Hendricks is qualified to testify as to each of these topics and that his opinions are reliable. The Court addresses the admissibility of Hendricks's opinions as to each topic.

---

[16] *Procter & Gamble Co. v. Haugen*, No. 1:95-CV-94 TS, 2007 WL 750435, at *1 (D. Utah Mar. 7, 2007) (quoting Fed. R. Evid. 702, Advisory Committee's note, 2000 Amendments).

[17] *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000); *Roco, Inc. v. EOG Res., Inc.*, No. 14-1065, 2016 WL 6610896, at *8 (D. Kan. Nov. 9, 2016).

[18] *Goebel*, 215 F.3d at 1087.

A.  **Defendant's Procedures**

Hendricks proposes to testify regarding Defendant's policies and procedures, including those related to reinvestigations. Specifically, Hendricks intends to testify as to how Defendant's matching algorithm operates, how Defendant relies on the Automated Consumer Dispute Verifcation ("ACDV") exchange to reinvestigate when consumers dispute information in their credit files, Defendant's practice of "parroting," and problems with these procedures.

Hendricks states in his report that he is qualified to testify about these topics based on (1) his experience of thirty-three years editing and publishing a biweekly newsletter that covered the credit reporting industry; (2) his authoring of a book focused on the credit reporting industry and co-authoring of a book with a chapter on credit reporting; (3) serving as an expert witness in FCRA litigation; (4) testifying before Congress and state legislatures, and presenting at continuing legal education events on credit reporting topics; (5) serving as an expert consultant to government agencies and credit reporting companies; and (6) his FCRA Certification from the National Credit Reporting Association ("NCRA"). Defendant argues Hendricks is not qualified to testify as to these topics. Defendant argues Hendricks does not possess any education, work experience, or training related to the operation of a CRA. Defendant contends that Hendricks's sole qualification is based on his experience as "a professional witness against Equifax,"[19] which is not enough to satisfy the requirements of Rule 702.

The Court finds Hendricks is qualified to testify about Defendant's policies within the context of policies of other CRA and the credit reporting industry. Hendricks's qualifications go beyond simply serving as a professional witness, and include more than thirty years covering the credit reporting industry. Through his experience, he has gained detailed knowledge of FCRA

---

[19]Doc. 39 at 5.

standards, indicia of mixed files, and CRAs' reinvestigation procedures. A layperson is likely not to have this detailed knowledge, and the Court finds that Hendricks's testimony regarding the nature of credit reports, FCRA standards, mixed files, and Defendant's "inner workings" would be helpful to the trier of fact in understanding both credit industry standards and Defendant's policies and procedures regarding mixed files.[20]

As to the second prong of the Rule 702 analysis, Defendant argues Hendricks's proposed testimony is unreliable because it does not satisfy the four *Daubert* factors. Defendant contends that Hendricks does not attempt to explain his methods, his methods have not been subjected to testing or peer review, he provides no known rate of error, and his methods are not generally accepted in the scientific community. Defendant also generally argues that the facts Hendricks states in support of his opinions are inaccurate.

As the Supreme Court has explained, there are "many different kinds of experts, and many different kinds of expertise."[21] Because of this diversity, the Supreme Court has made clear that the "Rule 702 inquiry [is] 'a flexible one,'" and that the factors set forth in *Daubert* "do *not* constitute a 'definitive checklist or test.'"[22] While in some cases the *Daubert* factors may be paramount, "[i]n other cases the relevant reliability concerns may focus upon personal knowledge or experience."[23]

---

[20]*See, e.g.*, *McDonough v. JPMorgan Chase Bank*, No. 4:15-cv-00617-JCH, 2016 WL 4944099, at *2 (E.D. Mo. Sept. 16, 2016) (finding that "Mr. Hendricks's experience and testimony regarding standard credit reporting policies and procedures will assist the trier of fact"); *Valenzuela v. Equifax Info. Servs. LLC*, No. CV-13-02259-PHX-DLR, at *2 (D. Ariz. Nov. 6, 2015) ("[A] layperson is not likely to have independent knowledge of the intricacies of a partial matching algorithm, the role it plays in developing a credit report, and the reasonableness of the [ACDV]. Hendricks' specialized knowledge on these topics will assist the trier of fact.").

[21]*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

[22]*Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993)).

[23]*Id.*

As explained above, "Hendricks has accumulated a wealth of personal knowledge and experience in consumer credit reporting agency practices."[24] His testimony regarding the issues associated with Defendant's reinvestigation procedures is based on his experience and research in FCRA matters. "Thus, his method is simply an application of his experience with and understanding of the FCRA and the credit reporting industry to the facts at hand."[25] Although Hendricks provides no indication that his methods have been tested or subjected to peer review, and he does not provide a rate of error, the Court is not convinced that Plaintiff's inability to satisfy each of the *Daubert* factors precludes his testimony. Given Hendricks's extensive experience in this area and the nature of his testimony, which is based on his observations of issues with CRAs' procedures over several decades, the Court finds that his proposed testimony is sufficiently reliable to pass scrutiny under Rule 702.[26]

Certainly, the Court recognizes that Defendant takes issue with the accuracy of the facts supporting Hendricks's opinions and the rigor with which he has applied his methods. Defendant can explore these issues on cross examination. The Court finds that Hendricks's specialized knowledge of the credit reporting industry, the sufficiency of the facts supporting his opinions, and the reliability of those opinions qualify him to testify as an expert about Defendant's procedures and perceived issues with those procedures. Accordingly, the Court denies Defendant's motion as it relates to this subject.

---

[24]*Ma v. Equifax Info. Servs., LLC*, -- F. Supp. 3d --, No. 1:16-CV-1055-LMM, 2017 WL 6378979, at *4 (N.D. Ga. Dec. 13, 2017).

[25]*Valenzuela*, 2015 WL 6811585, at *2.

[26]*See Kumho Tire*, 526 U.S. at 150 (recognizing that "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.").

B.  **Damages**

Hendricks proposes to testify about the damages Plaintiff has suffered and how those damages compare to other "victims of chronic credit report inaccuracy."[27] Defendant argues that Hendricks is not qualified to testify as to this subject, and that his opinions are not reliable and would not be helpful to the trier of fact. The Court agrees. Hendricks does not possess specialized training or experience in a field such as medicine, psychology, or economics that would qualify him to opine about whether Plaintiff has incurred certain types of injuries. Furthermore, his opinions regarding Plaintiff's damages amount to little more than speculation as to the injuries Plaintiff incurred.[28]

Plaintiff also has not shown that Hendricks's testimony would be particularly helpful to the trier of fact. Plaintiff may testify as to how the alleged reporting inaccuracies impacted her physically, emotionally, economically, or otherwise. Indeed, Hendricks notes in his report that "most, if not all, of the testimony regarding Plaintiff's specific actual damages will come from fact witnesses."[29] Plaintiff and Hendricks suggest that his testimony regarding damages other victims have suffered will help the trier of fact assess whether Plaintiff's damages were foreseeable. But the foreseeability of damages is a factual issue that is within the understanding of a lay juror, and Plaintiff has failed to show how Hendricks's opinions would be helpful to the damages determination. For these reasons, the Court grants Defendant's motion as it relates to Hendricks's proposed testimony on damages.

---

[27] Doc. 39-1 at 11–15.

[28] *See, e.g., id.* at 12 ("All of these issues made it unreasonably difficult for Plaintiff to apply for and/or get approved for credit. Thus, if Plaintiff ever needed credit, and the creditor would check her personal Equifax credit report, she would have been damaged by the inaccurate tradelines caused by the wrongful mix."), 13 ("This assuredly impacted how Plaintiff was able to provide for herself and her family.").

[29] *Id.* at 13.

## C. State of Mind

Defendant argues that Hendricks should not be allowed to give testimony regarding Defendant's state of mind. At several points in his report, Hendricks states his opinions as to Defendant's motivations,[30] what Defendant did or did not consider,[31] and what Defendant knew and concluded.[32] The Court agrees that these topics are not the subject of proper expert opinion testimony. These opinions amount to little more than speculation, unsupported by sufficient facts or data.[33] Moreover, to the extent Hendricks's opinion is intended to convey Defendant's state of mind, "he is no more qualified than the members of the jury to opine on that issue."[34] Because the Court finds Hendricks's opinions unreliable on these topics, the Court grants Defendant's motion as it relates to testimony regarding Defendant's knowledge, intentions, or state of mind.

## D. Legal Conclusions

Defendant also argues that Hendricks's proposed testimony includes a number of impermissible legal conclusions. Under Fed. R. Evid. 704(a), an expert witness' opinion is not inadmissible simply because it embraces an ultimate fact issue. However, an expert "may not

---

[30]*E.g.*, Doc. 39-1 at 7 ("[Defendant] sees its fundamental role as ensuring that the credit reports it sells include all information that might possibly relate to the consumer in question.").

[31]*Id.* at 9 (stating that Defendant "does not even consider evaluating whether these furnishers' important responses are relevant to the mixed-file disputes from customers"), 10 ("[Defendant] did not consider taking other reasonable investigative steps that could have been more effective for reinvestigating Plaintiff's mixed file-related disputes.").

[32]*Id.* at 6 ("[Defendant] knew that a mixed file was often an ongoing and recurring phenomenon."), 8 ("rather than adequately reinvestigate Plaintiff's disputes, [Defendant] would conclude the wrongfully-mixed tradeline should remain if a furnisher 'verified' either two or three identifiers").

[33]*See* Fed. R. Evid. 702(b) (providing that expert testimony must be based on "sufficient facts or data"); *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995)) ("While expert opinions 'must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation, . . . absolute certainty is not required.'").

[34]*Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL, 2017 WL 2694137, at *3 (D. Kan. June 22, 2017) (precluding expert from testifying that defendant's actions were "reckless").

apply the law to the facts of the case to form legal conclusions."[35] "Nevertheless, an expert may refer to the law in expressing his opinion."[36]

Hendricks states several opinions in his report that amount to legal conclusions. For example, he states that Defendant adopted "inadequate procedures for assuring accuracy," and that Defendant's processes were "not reasonably calculated to facilitate an adequate reinvestigation."[37] Hendricks also opines that Defendant's conduct was reckless.[38] The adequacy or reasonableness of Defendant's processes and procedures is an element of Plaintiff's FCRA claims,[39] and Hendricks's opinions on these legal issues will not be helpful to the trier of fact.[40] Plaintiff contends that Hendricks's opinions on these issues are admissible because he "has a unique vantage to understand and explain the legal ramifications of Equifax's action or inaction."[41] But regardless of Hendricks's familiarity with the credit industry, Defendant's actions or inactions, and FCRA standards, his conclusions regarding the reasonableness of

---

[35]*Hartzler v. Wiley*, 277 F. Supp. 2d 1114, 1117–18 (D. Kan. 2003) (citing *A.E. v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991)).

[36]*Id.* at 1118 (citing *Indep. Sch. Dist. No. 25*, 936 F.2d at 476).

[37]Doc. 39-1 at 2, 7–8.

[38]*Id.* at 3 ("it was reckless for [Equifax] to disregard different SSNs, name, DoBs and addresses and different towns, clearly indicating that Plaintiff was not Angela Bogart or Bierman"), 7 (discussing Defendant's "foreseeably defective approach to partial matching").

[39]*See* 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."); 15 U.S.C. § 1681i(a)(1)(A) (stating that upon notice by a consumer of disputed information in the consumer's file, a credit reporting agency "shall, free of charge, conduct a reasonable investigation to determine whether the disputed information is inaccurate").

[40]*See Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL, 2017 WL 2694137, at *3 (D. Kan. June 22, 2017) (precluding expert from testifying that defendant's actions were "reckless" because expert was "no more qualified than the members of the jury to opine on that issue").

[41]Doc. 40 at 12.

Defendant's procedures "articulates a legal conclusion drawn by applying the law to the facts."[42] This type of opinion is both improper and unhelpful to the trier of fact.[43]

Hendricks may reference FCRA and industry standards in testifying about the credit reporting industry, Defendant's conduct, and perceived issues with Defendant's processes and procedures. But in doing so, Hendricks must avoid expressing ultimate legal conclusions regarding the reasonableness of Defendant's procedures for ensuring maximum possible accuracy and conducting reinvestigations of credit report disputes. Accordingly, the Court grants Defendant's motion as it relates to Hendricks's proposed testimony regarding the reasonableness of Defendant's procedures.

### E. Prior Cases, Consent Decrees, and "Operation Busy Signal"

Hendricks proposes to testify regarding past cases involving FCRA claims against Defendant, consent decrees that Defendant entered into in the 1990s, and Congressional action against Defendant and other reporting agencies regarding responsiveness to customer phone calls. Defendant argues that this testimony is inadmissible under Fed. R. Evid. 404(b)(1), which prohibits evidence of prior bad acts. Defendant also argues that this testimony is not relevant, that it would be unduly prejudicial, and that Hendricks's opinions or factual testimony on these issues would not help the trier of fact. Plaintiff responds that Hendricks's testimony on these issues is relevant to show that Defendant was on notice that its policies and procedures were inadequate to comply with the FCRA.

---

[42]*Ross v. Rothstein*, 92 F. Supp. 3d 1041, 1074 (D. Kan. 2015).

[43]*Id.* at 1074–75; *see Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (holding that expert's opinion testimony, which amounted to "legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under § 1983," was improper).

Even assuming that Rule 404(b) does not preclude Hendricks's testimony on this issue because the testimony would tend to establish that Defendant had knowledge of issues related to its procedures, the Court finds that Hendricks's testimony is inadmissible. Hendricks's proposed testimony on these consent agreements, prior cases, and administrative actions does not require any specialized knowledge, skill, or experience, and thus his expert testimony on these issues would not be particularly helpful to the trier of fact.[44] To the extent evidence of these prior actions is admissible,[45] expert testimony is unnecessary to convey the subjects of these actions to the fact finder. Thus, Hendricks will not be permitted to testify as to these prior actions.

**IV.     Conclusion**

The Court grants in part and denies in part Defendant's motion to exclude Hendricks's testimony. Hendricks's experience covering the credit reporting industry, testifying in cases and before Congress on credit reporting issues, and his experience writing about these issues over several decades qualifies him to testify regarding Equifax's policies and procedures as they relate to industry standards. The Court finds his testimony on these issues will be both reliable and helpful to the trier of fact in placing Defendant's alleged conduct in the context of the industry. Accordingly, Hendricks may testify as to Defendant's policies and procedures. However, Hendricks may not testify as to damages, Defendant's state of mind, any legal conclusions, or prior consent decrees, cases, or administrative actions.

---

[44]*See Valenzuela v. Equifax Info. Servs., LLC*, No. CV-13-02259-PHX-DLR, 2015 WL 6811585, at *3 (D. Ariz. Nov. 6, 2015) ("It appears that Hendricks merely is recounting the facts of prior cases in which he offered expert witness testimony. No specialized knowledge, skill, or experience is necessary to understand the existence and subjects of these prior cases, consent decrees, and administrative actions.").

[45]The Court expresses no opinion regarding the admissibility of this evidence.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Exclude or Limit the Testimony of Plaintiff's Expert, Evan Hendricks (Doc. 38) is **granted in part and denied in part** as explained above.

**IT IS SO ORDERED.**

Dated: March 29, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE